## Trimble's License.

*Liquor law—Transfer of license—Appeal.*

1. An order of the court of quarter sessions refusing to transfer a liquor license for the reason that the statutory provisions relative to such a transfer had not been complied with, will not be reversed on an appeal by the owner of the license, where the appellant does not print in his paper-book the petition for transfer, and there is nothing in the record to show that the reason assigned by the lower court was not well founded, or that the appellant was such a party aggrieved as was entitled to an appeal.

*Liquor law—Qualification of applicant—Citizenship—Revocation of license—Act of May 13, 1887, P. L. 108.*

2. An alien who has merely declared his intention to become a citizen of the United States, and to renounce his former allegiance, is not qualified to hold a liquor license under the Act of May 13, 1887, P. L. 108, which provides that such licenses "shall only be granted to citizens of the United States;" and this is the case although the constitution and law of the state. where the declaration had been made provides that persons who make such declaration shall enjoy all the privileges of citizens, including the right to vote and the right to hold a liquor license.

3. The court of quarter sessions has the power to revoke a retail liquor license granted to an alien upon his representation that he was a

naturalized citizen of the United States; and this is so although such representation may have been made in good faith.

Submitted Nov. 15, 1909.  Appeal, No. 85, April T., 1910, by J. R. Trimble, from order of Q. S. Beaver Co., June T., 1909, No. 16, revoking a liquor license and refusing a transfer in re Revocation of License of J. R. Trimble.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.  Affirmed.

Petition to revoke liquor license.
Petition to transfer liquor license.

HOLT, P. J., filed the following opinion:

This is a proceeding to revoke the retail license granted to J. R. Trimble on March 5, 1909, to keep a hotel in the first ward of the borough of Rochester, in this county.

The petition was presented by D. C. Braden, county detective of Beaver county; it avers that at the time the said license was granted, the said J. R. Trimble was not a citizen of the United States, which is the only ground alleged in said petition for the revocation of said license.

The respondent has filed an answer to the petition, in which he avers that he was born in the township of Darlington, Province of Ontario, Dominion of Canada, on November 18, 1855; that he came to the United States in the year 1875, returned to the Dominion of Canada in 1876, and again came to the United States in the year 1886, locating permanently at Mount Clemens, Macomb county, Michigan; that on November 1, 1887, in the circuit court for Macomb county, in said state, he declared his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to the Queen of Great Britain, of whom he had been a subject; that at that time he was registered in the said county of Macomb, and was a qualified voter in that place from the time of his registration until his removal to Beaver county, Pennsylvania, in March, 1907, and enjoyed and exercised all the rights and privileges of a citizen; that art. VII of the constitution of the state of Michigan, as amended in the year 1894, reads as follows:

"Section 1. In all elections . . . . every male inhabitant of foreign birth, who, having resided in the state two years and six months prior to the eighth day of November, one thousand eight hundred ninety-four, and having declared his intention to become a citizen of the United States two years and six months prior to said last named day . . . . shall be an elector and entitled to vote at any election," etc.

That he having renounced allegiance to the queen of Great Britain, of whom he had·formerly been a subject, and declared his intention to become a citizen of the United States, fully believed that he had complied with all the requirements of the law in becoming a citizen of the United States of America; that he was actually a citizen of the state of Michigan, and being such, was necessarily a citizen of the state of Pennsylvania and of the United States when he changed his place of residence to the state of Pennsylvania, and that the respondent filed in the United States district court, at Pittsburg, Pennsylvania, on August 10, 1909, his petition for final naturalization papers.

A time and place for hearing was fixed and hearing had on Monday, August 16, 1909. From the evidence produced, it appears that under the constitution and laws of the state of Michigan, every male inhabitant of foreign birth, who, having resided in the said state of Michigan two years and six months prior to November 8, 1894, and having declared his intention to become a citizen of the United States two years and six months prior to said last-named day, shall be an elector and entitled to vote, provided that he is above the age of twenty-one years, and has resided in the said state six months, and in the township or ward in which he offers to vote, twenty days next preceding such election, and that he is eligible to be elected to and hold office in the said state, except in certain cases where the constitution or laws provide that the incumbent must be a citizen of the United States. It also appears from the evidence that such person is entitled to enjoy all the rights and privileges, commercially, that are enjoyed by citizens of the United States, and that the license laws of the state of Michigan do not require one to be a citizen of the

United States to be eligible to hold a liquor license. It also appears that the respondent, on November 1, 1887, in the circuit court of the county of Macomb, in the state of Michigan, declared his intention to become a citizen of the United States; but he has not been naturalized in accordance with the laws of congress relating to naturalization, and that during the time he resided in the state of Michigan, he voted at elections and held licenses to sell liquor at various hotels which he conducted.

We find from the evidence at the time the respondent made his application for the license in question, he firmly believed he was a citizen of the United States, and entitled to receive a license under our laws; and that he was not aware of the fact that his declaration of intention, aforesaid, did not entitle him to citizenship, and the enjoyment of the rights of a citizen of the United States of America. The hotel conducted by the respondent is one of the best hotels in the county of Beaver, and the ability of the respondent to conduct it is beyond question.

At the hearing, a petition was presented by Noah G. Mayhew for a transfer of the license of the respondent. This petition sets forth, among other things, that the petitioner has purchased from the said J. R. Trimble the lease which the said Trimble holds as lessee on the said hotel property, fixtures and furniture contained therein together with said license, provided a transfer of the same can be obtained.

There are two questions in this case for our consideration: (a) Whether or not J. R. Trimble was at the time said license was granted a citizen of the United States within the meaning of our license laws; and (b) whether or not the license heretofore granted to him can be transferred upon the petition of said Noah G. Mayhew.

Section 2 of the Act of May 13, 1887, P. L. 108, reads as follows: "Licenses for the sale of vinous, spirituous, malt, or brewed liquors at retail, in quantities not exceeding one quart, shall only be granted to citizens of the United States of temperate habits and good moral character." Section 5, of the same act, prescribes the form of petition to be presented

for a license to sell such liquors at retail, and the third requisite to be set forth in such petition is, "The place of birth of said applicant, and if a naturalized citizen, where and when naturalized."

Was the respondent at the time the license was granted a citizen of the United States as contemplated by this act of assembly? It has been held in several cases that a state cannot confer citizenship upon one who has only declared his intention to become a citizen of the United States.

A foreign-born resident of the United States, who has merely declared his intention to become a citizen, but has never complied with any other provision of the naturalization laws, is none the less an alien because of the fact that the constitution and laws of the state wherein he resides have conferred the elective franchise and other privileges of citizenship on foreign subjects who have declared their intention to be naturalized, and that he has actually voted in such state for national, state and county officers: City of Minneapolis v. Reum, 56 Fed. Repr. 576.

Every person at his birth is presumptively a citizen, or subject of the state of his nativity. To the land of his birth he owes support and allegiance, and from it he is entitled to the civil and political rights and privileges of a citizen or subject. This relation, imposed by birth, is presumed to continue until a change of nationality is proved: Minor v. Happersett, 88 U. S. 162. A change of nationality cannot be made by the individual at will. Each nation has the right to refuse to grant the rights and privileges of citizenship to all persons not born upon its soil, and, if it determines to admit them to those rights and privileges, it may fix the terms upon which they shall be conferred upon him. Naturalization is the admission of a foreign subject or citizen into the political body of a nation, and the bestowal upon him of the quality of a citizen or subject.

The fourteenth amendment to the constitution of the United States provides, that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein

they reside." As the respondent was born in the Dominion of Canada, he is presumed to be a British subject, and not a citizen of the United States, until naturalized therein. The laws of the United States prescribe the conditions upon compliance with which an alien may become a citizen of this nation. The act of congress of April 14, 1802, Rev. Stat., sec. 2165, provides that an alien may be admitted to become a citizen of the United States in the following manner and not otherwise: First. He shall, two years at least prior to his admission, declare before a proper court his intention to become a citizen of the United States, and to renounce his allegiance to the potentate or sovereignty of which he may be at the time a citizen or subject. Second. He shall, at the time of his application to be admitted, declare, on oath, before some one of the courts having jurisdiction in such cases, that he will support the constitution of the United States, and that he absolutely and entirely renounces and abjures all allegiance and fidelity to every foreign prince, potentate, state or sovereignty; and particularly, by name, to the prince, potentate, state or sovereignty of which he was before a citizen or subject, which proceeding shall be recorded by the clerk of the court. Third. It shall be made to appear to the satisfaction of the court admitting such alien, that he has resided in the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of a good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; but the oath of the applicant shall in no case be allowed to prove his residence. The act of June 29, 1906, U. S. Statutes, chap. 3592, has imposed upon an applicant for naturalization additional requirements.

The respondent takes the position that the constitution and laws of the state of Michigan having granted to him practically all the privileges that citizens of the state of Michigan enjoy, he thereupon became a citizen of the United States, and that when he came to the state of Pennsylvania he was

entitled to all the rights of a citizen of the United States in this state, and that as such he is entitled to hold a liquor license under the laws of Pennsylvania. A state may confer on foreign citizens or subjects all the rights and privileges it has the power to bestow, but, when it has done all this, it has not naturalized them. They are foreign citizens or subjects still, within the meaning of the constitution and laws of the United States. The power to naturalize foreign subjects or citizens was one of the powers expressly granted by the states to the national government: City of Minneapolis v. Reum, supra.

By sec. 8, art. I, of the constitution of the United States, it was provided, that "the Congress shall have the power to establish a uniform rule of naturalization." Congress has exercised this power, established the rule, and expressly declared that foreign-born residents may be naturalized by a compliance with it, and not otherwise. This power, like the power to regulate commerce among the states, was carved out of the general sovereign power held by the states when this nation was formed and granted by the constitution to the congress of the United States. It thus vested exclusively in congress, and no power remained in the states to vary or change the rule of naturalization congress established, or to authorize any foreign subject to denationalize himself, and become a citizen of the United States, without a compliance with the conditions congress has prescribed: Dred Scott v. Sandford, 60 U. S. 393; Boyd v. Nebraska, 143 U. S. 135. The result is, that the power granted congress by art. I, sec. 8, of the constitution of the United States to establish a uniform rule of naturalization, is exclusive; naturalization laws enacted by congress in the exercise of this power constitute the only rule by which a foreign subject may become a citizen of the United States, or of the state, within the meaning of the Federal constitution and laws. It is not in the power of the state to denationalize a foreign subject who has not complied with the federal naturalization laws, and constitute him a citizen of the United States or of the state.

"A foreign subject who is qualified to become a citizen of

the United States under sec. 2167 of the Revised Statutes, does not become such by filing a declaration of intention so to do. That section requires that he shall renounce allegiance to the sovereignty of which he is a subject, and comply with the other conditions prescribed in the second and third paragraphs of section 2165 of the Revised Statutes, in order to become naturalized; and until he does so, he remains a foreign subject:" City of Minneapolis v. Reum, 56 Fed. Repr. 576.

A state cannot make a subject of a foreign government a citizen of the United States. This can only be done in the mode provided by the naturalization laws of congress. Citizenship and the right to vote are neither identical nor inseparable; and the constitution of the state, although it authorizes resident unnaturalized foreigners to vote at state elections and hold office does not make them citizens of the state, although they may have resided in such state for many years, and voted at elections as authorized by the state constitution, and held office under the laws of such state:" Lanz v. Randall et al., 14 Fed. Cas. 8,080.

In the case just cited, the plaintiff was born a subject of the Grand Duke of Mecklenburg, and came to the state of Minnesota, where he had resided for about fifteen years prior to the decision of that case. Shortly after his arrival in the state, he made his declaration of intention with a view of naturalization, but he never applied for or obtained the final certificate of naturalization. He had several times voted at elections held in the state, and the constitution of the state authorized him to do so without naturalization. He was also qualified to hold office by the state constitution. The question in that case was whether such person in the state of Minnesota was to be regarded as a citizen, or a subject of Mecklenburg within the meaning of the constitution, art. III, sec. 2. Judge MILLER, of the circuit court, among other things, said: "I am of opinion that no state can make the subject of a foreign prince a citizen of the state in any other mode than that provided by the naturalization laws of Congress; and that when the Constitution (art. I, sec. 8) says that Congress shall have power 'to establish a uniform rule of naturaliza-

tion, and uniform laws on the subject of bankruptcies throughout the United States,' it designed these rules by which the citizen or subject of a foreign government could become a citizen or subject of one of the states of this Union, and thereby owe allegiance to such state, and to the United States, and cease to owe it to his former government:" Lanz v. Randall et al., 14 Fed. Cas. 8,080.

The language of the constitution of the state of Minnesota, in conferring the right to vote upon resident aliens, is very similar to the language of the constitution of the state of Michigan conferring the like right. Judge MILLER, while he held that no state had the power to confer citizenship, also held that he did not place the decision in that case on such ground. He said the state of Minnesota had not attempted in that case to make the plaintiff in said case a citizen of that state, nor did the provisions of the constitution of the state, when applied to the condition of the plaintiff therein, have that effect; that when aliens have taken the first step toward becoming citizens, by making the legal and official declaration to that effect they are allowed to vote, if they possess the other qualifications of age, sex and residence; but citizenship is not one of them. For in conferring such right the framers of the constitution of the state of Minnesota had no intention of making a citizen of a foreigner. In concluding the opinion in that case, Judge MILLER said: "I am of the opinion, then, that nothing in the Constitution of Minnesota, or in the acts of plaintiff under it, has made, or was intended to make, him a citizen of that State, even if it be within the constitutional power of the state so to do."

Referring to the case at bar, we are of the opinion that the constitution of the state of Michigan did not make the respondent in this case a citizen of that State, and that he was, during his residence in that state, and that he has been since his removal to this state, a British subject, and an alien within the meaning of our constitution and laws. Having reached this conclusion, it is our opinion that he is not entitled to hold a retail liquor license under the laws of the state of Pennsylvania, and that the court was without jurisdiction

to confer such privilege upon him; the license having, there-
fore, been improvidently granted should be revoked.

We are not without precedent in the state of Pennsylvania
for the conclusion we have reached. In Hoy's License, 3
Montg. Co. L. R. 188, it was held that the holder of a liquor
license must be a citizen of the United States, and that when
such license is improvidently granted to one not a citizen,
such license upon application will be revoked. "One who has
simply declared his intention to become a citizen of the
United States is not entitled to a license:" Barrett's License,
26 Pa. C. C. Rep. 178.

As to the second proposition, is there, first, anything to
which the petition to transfer can attach, and, second, has
the petitioner for a transfer complied with the law relating to
transfers of licenses?

A transfer necessarily presupposes the existence of some-
thing to transfer, and to which the petition can attach. A
license must have been lawfully granted before there is any-
thing to transfer: Daniel's Case, 31 Pa. Superior Ct. 156;
Haye's Case, 18 Phila. 456.

The second section of the act of 1887, specifically says that
licenses for the sale of liquor shall only be granted to citizens
of the United States. The court was without jurisdiction to
grant a license to an alien. To transfer this license would be
to presume its legality.

Transfers of liquor licenses are provided for by statute.
There are two acts in force in relation to such transfers.
One is the Act of April 20, 1858, P. L. 365, the seventh section
of which reads, in part, as follows: "No license to vend the
liquors aforesaid, granted under this or any other law of this
Commonwealth, shall be transferable, or confer any right to
sell the same in any other house than is mentioned herein;
nor shall any bar or place where such liquor is sold by less
measure than one quart be underlet by the person licensed to
sell thereat; but if the party licensed shall die, remove or
cease to keep such house, his, her, or their license may be
transferred, by the authority granting the same, or a license
be granted the successor of such party for the remainder of

the year, by the proper authority, on compliance with the requisitions of the law in all respects, except publication, which shall not in such cases be required," etc. Under the provisions of this statute a license may be transferred, or a new license granted to the successor of a person who has died, removed or ceased to keep the house to which the license was granted. It has also been held that in case of insolvency, so that the licensee may be said to be no longer in a position to keep the house, his license may be transferred either with or without his consent. Also, where the holder of a license has by his conduct forfeited his right to the license, it may be transferred at the instance of the owner of the premises to another: Umholtz's License, 191 Pa. 177; Teller's License, 3 Pa. C. C. Rep. 235; Heilig's License, 2 Pa. Dist. Rep. 342; Hedrick's License, 30 Pa. C. C. Rep. 109.

The petition for a transfer of the license in this case does not present any of the grounds mentioned in the act of 1858.

The other act in relation to transfers is the Act of May 17, 1901, P. L. 263, the first section of which reads in part as follows: "The judges of the several courts of the Commonwealth having authority under existing laws to grant licenses for the sale of vinous, spirituous, malt or brewed liquors, are hereby authorized to transfer such licenses from one person to another, or from one place to another within the same precinct, ward, city, or borough, as the court may determine." The act of 1901, is an amendment of the first section of the Act of July 15, 1897, P. L. 297. The petitioner asks that a transfer of the license of the respondent be made on the ground that he has purchased the lease held by the respondent, the personal property and fixtures in the said hotel, and the said license. The petition, therefore, comes within the meaning of the act of July 15, 1897, as amended by the act of May 17, 1901.

The second section of the act of July 15, 1897, reads as follows: "Application for any such transfer shall be filed in the office of the clerk of Quarter Sessions of the proper county ten days before the said petition shall be presented to the Court or the judge thereof; and upon the expiration of the

said ten days, the clerk of said Court of Quarter Sessions shall certify that the application for said transfer has been on file in his office for the period of time required by the Act; provided, however, that in case of death of the licensee such transfer shall be made forthwith on petition, without preliminary or interlocutory order and without publication of notice." The petition does not appear to have been placed on file and certified by the clerk as required by the said act of July 15, 1897, but was presented in the first instance to the court the day of the hearing on the rule to revoke said license. This was not a compliance with the statute.

### ORDER.

Now, August 24, 1909, the order made March 5, 1909, granting unto the respondent a license, is revoked, and the respondent is directed to return the certificate or license which he holds to the clerk of this court for cancellation. And it is further ordered that the petition of Noah G. Mayhew for a transfer of the said license be and the same is hereby dismissed.

*Errors assigned* were the orders of the court.

*John B. McClure,* for appellant.

*J. Blaine McGoun,* for appellee.

PER CURIAM, December 20, 1909:

On the day of the hearing in the quarter sessions of the rule to show cause why the retail liquor license granted to J. R. Trimble should not be revoked, Nathaniel Mayhew presented a petition to have the license transferred to him. One of the reasons assigned by the court for dismissing the latter petition was that the statutory provisions relative to the transfer of licenses had not been complied with. The petition is not printed in the appellant's paper-book, and there is nothing in any part of the record that is printed from which it may be implied that J. R. Trimble is such party aggrieved by that

order as is entitled to appeal therefrom. Nor is there anything in the record to show that the above reason assigned by the learned judge was not well founded. This is all that we need say relative to the assignments bearing upon the dismissal of the petition of Nathaniel Mayhew.

Upon the questions, (a) whether, according to his own showing, J. R. Trimble was a citizen of the United States within the true intent and meaning of sec. 2 of the Act of May 13, 1887, P. L. 108, and (b) whether the court of quarter sessions has authority, after due hearing, to revoke a retail liquor license granted to an alien in violation of that section of the act, where it was granted upon his representation that he was a naturalized citizen of the United States, we all concur in the conclusions reached by the learned judge below. They are well supported by the reasoning of his opinion, and nothing can be profitably added by us to the discussion.

The order is affirmed.