## Aquilani's License

*George Maxman*, for appellant.

*Bert A. Hoffman*, Deputy Attorney General, for Pennsylvania Liquor Control Board.

BROWN, JR., J., May 14, 1938.—This is an appeal from an order of the Pennsylvania Liquor Control Board suspending a restaurant liquor license for a period of five days. The reason given by the Board for the suspension is that "The licensed establishment is operated in a noisy, improper and disorderly manner".

The Pennsylvania Liquor Control Act (Act of June 16, 1937, P. L. 1762; 47 P.S., section 744—410) provides in section 410 that the board may suspend or revoke a license for "any violation of this act, or any laws of this Commonwealth relating to liquor, alcohol, or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, or any violation of any laws of this Commonwealth or of the United States of America relating to the tax payment of liquor or malt or brewed beverages by any licensee, his officers, servants, agents or employes, or upon any other sufficient cause shown."

The operation of a licensed restaurant in a noisy, improper and disorderly manner is not a violation of any provision of the act, nor a violation of any law of this Commonwealth relating to liquor. Regulations of the board were not offered in evidence, and so no violation thereof was proved. It is thus apparent that the only statutory authorization for the board's action is contained in the clause "or upon any other sufficient cause shown." Licensee contends, however, that it is unconsti-

tutional, as an improper delegation of legislative authority, for the board to have or to exercise the power of suspending or revoking a license for any act other than a violation of the liquor laws or published regulations made in advance by the board.

The legislation which constitutes the background of the Liquor Control Act of 1937, however, contains many instances in which the legislature has left the revocation of liquor licenses to the discretion of the court of quarter sessions by means of the phrase "upon sufficient cause being shown". The most recent example is the Act of May 3, 1933, P. L. 252, entitled "An act to regulate and restrain the traffic in malt, brewed, and vinous and fruit juice beverages," etc. Section 13 of that act provided: "After a license has been granted, upon petition . . . to the court of quarter sessions, and *upon sufficient cause being shown* or proof being made to the court that the licensee holding a license . . . has . . . violated any of the laws of this Commonwealth relating to the sale of beverages, or relating to the manufacture, sale or transportation of alcohol or/and other alcoholic beverages, it may . . . suspend or revoke the said license issued by the treasurer". In *Revocation of Mark's License*, 115 Pa. Superior Ct. 256, the Superior Court stated (at pages 265-266) : "We think the act gives the court of quarter sessions power to revoke the license upon sufficient cause being shown other than a violation of the laws relating to the sale of liquors; and very wisely does not attempt to catalogue the causes which it deems sufficient, leaving it to the legal discretion of the court to determine, subject to review on certiorari by the appellate courts: Sterrett v. MacLean, supra [293 Pa. 557]. The phrase 'upon sufficient cause being shown' has been frequently used in dealing with the revocation of liquor licenses. We find it in the Act of March 22, 1867, P. L. 40, 41, where the court of quarter sessions was given power to revoke any license to sell intoxicating liquors granted by them 'upon sufficient cause being shown;' and this 'cause' was not

restricted by the Supreme Court to a violation of the laws relating to the sale of liquors. See Dolan's App., 108 Pa. 564, where the appellant contended (p. 565), that 'the only sufficient cause . . . is a conviction for any of the offenses declared by the legislature to be grounds of revocation.' So also, in the Brooks High License Act of May 13, 1887, P. L. 108, it was provided in Section 7, that 'upon sufficient cause being shown or proof being made to the said court that the party holding a license has violated any law of this Commonwealth relating to the sale of liquors, the court of quarter sessions shall, upon notice being given to the person so licensed, revoke the said license.' This is almost the identical language used in the act now under consideration, and it was held by this court in Trimble's License, 41 Pa. Superior Ct. 370, that a license could be revoked by the court where the licensee had falsely represented in his application that he was a naturalized citizen of the United States, when in fact he was an alien; thus recognizing that the 'sufficient cause shown' was not limited to the sale of liquors in violation of law. McGinley's License, 32 Pa. Superior Ct. 324, 326, 327, also, but impliedly, recognized that the court had power to revoke the license for sufficient cause shown other than a violation of the law relating to the sale of liquors. See also, Schmitt's License, 37 Pa. Superior Ct. 420."

Since the act of 1937 is, in respect to suspension and revocation, almost identical with the act of 1933 and its predecessors, there is no reason why, at this late date, the grounds on which a license may be suspended or revoked should be limited to those specifically enumerated in the act. The retention of this phrase in the present act indicates clearly that the legislature intended to continue the settled policy of the law.

The granting of this broad discretionary power to the board was in accordance with the policy of the legislature to relieve the courts of the details incident to the administration of the liquor law, and to permit them to

perform their proper function of hearing and determining cases presented to them. The creation of administrative boards to discharge duties formerly lodged in the courts of a non-judicial nature preserves the distinction between the three branches of our government—legislative, executive and judicial, and that such boards pass upon questions of law is neither new nor novel, for the executive branch has always had to interpret, in the first instance, laws as passed by the legislative. This distinction is clearly recognized in the Liquor Control Act, for the person, whose license has been suspended or revoked, has the unrestricted right to appeal from the action of the board to the court of quarter sessions. As the court hears the matter de novo, thus determining questions of fact as well as of law, control of the suspension and revocation of licenses still remains, where it was under prior acts, in the courts. There is, therefore, no departure in principle from the law as it has heretofore existed.

There can be no doubt that the operation of a licensed establishment in a noisy, improper and disorderly manner is "sufficient cause" for the revocation of the license. Section 3(a) of the act (47 P.S., section 744—3) provides: "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." Obviously any action which violates the expressed purpose of the act, namely, the protection of the public health, peace and morals, is a sufficient cause for the suspension or revocation of a license issued and held under the provisions of the very same act. A noisy and disorderly establishment is not beneficial to the health, peace and morals of those persons who live nearby as well as to those who frequent it. Further than that, section 2 (47 P.S., section 744—2) defines a restaurant as a "repu-

table place", and a place which is disorderly and noisy is surely not reputable.

The testimony concerning the way in which the licensee conducted his establishment is conflicting. He and several of his customers testified that there was a minimum amount of noise, that patrons were not permitted to become intoxicated, and that anyone entering in an intoxicated condition was refused service and was required to leave. However, seven persons, men and women, living in houses across the street from the licensee's establishment all testified that on numerous occasions they had seen intoxicated people come out of the tap room, that it was noisy, that their rest was interfered with, and that persons leaving the licensee's place often urinated in the street. It is apparent, therefore, that, according to the weight of the evidence, licensee's restaurant was operated in a noisy, improper and disorderly manner.

Licensee has chosen a semi-residential neighborhood in which to conduct his business. His establishment is located at 5239 Harlan Street, which is the northeast corner of 53rd and Harlan Streets, Philadelphia. Harlan Street does not continue across 53rd Street to the west. There are homes on both sides of Harlan Street from 52nd Street to 53rd Street, and on both sides of 53rd Street for a block in each direction, with the exception that to the north, on the east side of 53rd Street, there is the yard of a machine company which is enclosed with a wire fence, and permitted to be and is used as a playground by children. The conduct of licensee's patrons would not be tolerated in a business district, and it is even more objectionable in such an area as this.

The suggestion that the sole remedy in this case is by bill in equity to restrain the nuisance, is without merit. True, section 608(b) of the act (47 P.S., section 744— 608) provides that "An action to enjoin any nuisance, defined in this act, may be brought in the name of the Commonwealth of Pennsylvania . . .", but the nuisance defined, in section 608(a) of the act, is the possession and

sale of liquor "in violation of this act", and so the nuisance in this case does not come within that provision. There may be cases pertaining to the administration of the liquor laws which should be determined by means of a bill in equity; indeed, those living in the neighborhood of licensee's establishment might well maintain one under the testimony presented in this proceeding, but, as pointed out above, that remedy is not the only one available.

That the testimony presented related to events occurring before the license was renewed, is not controlling. The policy of the board to renew licenses automatically at the expiration of the regular yearly period, even though charges are pending against the licensee or the licensed premises, is fair to the licensee, because it enables him to continue his business without interruption, whereas if the board required the charges to be disposed of before or at the time of acting upon the application for renewal, licensee's business would, insofar as the sale of liquor is concerned, be stopped until the board disposed of the charges, and, if unfavorably to the licensee, until the court of quarter sessions had passed upon his appeal. If the board voluntarily changes its policy in this respect, or it is compelled to do so by the act being construed in such a way as to compel it to dispose of such charges before renewing a license, it is obvious that the disruption of the licensee's business will follow. Under the circumstances, it seems proper and just to construe the act so as to permit licenses to be renewed and to dispose of pending charges thereafter. Indeed, this is contemplated in section 410 of the act, supra, which gives the board "one year from the date of such violation or cause appearing" within which to cite a licensee to show cause why his license should not be suspended or revoked.

The board's order suspending the license for a period of five days should be, therefore, sustained, and the appeal dismissed.

### Order

And now, May 14, 1938, after hearing de novo by the court of quarter sessions, the order of the Pennsylvania Liquor Control Board suspending Stephen Aquilani's restaurant liquor license for a period of five days is sustained, the appeal therefrom is dismissed, and the license is suspended for the period of five days commencing June 6, 1938.