## Yarosz's License

*Jacob Venger*, for appellant.

*Andrew G. Uncapher*, Deputy Attorney General, and *Bradshaw, McCreary & Reed*, for Liquor Control Board.

WILSON, J., February 26, 1943.—The matter under consideration is the appeal of Thaddeus J. Yarosz, pro-

prietor of "Teddy Yarosz's Inn", from an order of the Pennsylvania Liquor Control Board refusing a restaurant liquor license and an amusement permit. The opinion and order of the board are as follows:

"OPINION.

"On October 2, 1942, Thaddeus J. Yarosz filed with this board an application for restaurant liquor license and amusement permit for premises located in the Township of Potter and County of Beaver.

"On December 8, 1942, a hearing upon said application was held after notice to applicant as required by law. At the said hearing, which was attended by the applicant and his counsel, the evidence adduced established the following facts:

"1. A number of protests against the issuance of this license have been filed with the board, including remonstrances from the authorities in charge of two industrial plants which are located in close proximity to the premises for which the license is desired.

"2. Several of the protestants, including representatives of the industrial plants, appeared at the hearing and testified that they are opposed to the issuance of a license at this location by reason of the fact that the two industrial plants located close by the premises for which a license is desired are engaged in the production of materials vital to the war effort and that the use of alcoholic beverages by the employees of the said industries might have a detrimental effect on the performance of the precision work engaged in by the said employees.

"In reviewing all of the testimony submitted at the hearing, the board finds that the applicant is a person of good reputation and that the premises proposed to be licensed comply with the physical requirements prescribed by the law.

"However, in view of the fact that the United States is engaged in a global war, and the granting of the li-

cense in question is protested by two industrial plants engaged in the production of materials necessary to the successful prosecution of the war effort and located in close proximity to the place sought to be licensed, the board is of the opinion that the protest should be sustained and the license refused. Therefore, the following order is made:

"ORDER

"AND NOW, January 20, 1943, for the above reasons it is ordered and decreed that the restaurant liquor license and amusement permit applied for by Thaddeus J. Yarosz for premises located in the Township of Potter and County of Beaver be and they are hereby refused.

"PENNSYLVANIA LIQUOR CONTROL BOARD"

It appearing that the applicant is a person of good reputation, and that the premises comply with the requirements prescribed by law, we directed the Commonwealth to proceed, and we took the evidence and testimony of the remonstrants, which were the Beaver County Institution District, the St. Joseph Lead Company, and the Koppers Company. A petition, signed by a large majority of the electors of the township, was also presented. It is proper that remonstrants be heard by both the board and the court upon appeal, but for the purpose only of giving competent testimony and for no other. Petitions and remonstrances, as such, have no place in the present liquor laws. Their appeal must be made to the legislature or to a referendum election. See Weinstein and Murman's Appeal, 89 Pitts. L. J. 129, affirmed in 145 Pa. Superior Ct. 476, and Havens' License, 27 D. & C. 376, in which the court said (p. 380):

"In the absence of any provisions in the Liquor Control Act similar to those in the former Brooks High License Act, providing for the filing of remonstrances

by citizens and the calling of witnesses to express their opinions on the advisability of granting the license, the court has no right or authority to give consideration to such remonstrances or evidence. In the absence of statutory provision they are not legal evidence. The existing legislation does not make the courts an independent licensing authority and does not vest in them the power to exercise their personal views as to the moral phase of the liquor question, or as to the desirability of the granting of any particular license. The sole purpose of the appeal provided for by the act is to prevent an unreasonable or arbitrary exercise of power or an abuse of discretion on the part of the Liquor Control Board: In re Refusal of Liquor License of Atwood Hotel, 14 Wash. Co. 74. If the board committed any substantial error in its conclusions of law or deductions of fact, such error would be a technical abuse of discretion and would require the sustaining of the appeal. The court respects and fully appreciates the opinions of the remonstrants and the high motives which inspired their protest, but it is powerless, under the provisions of the Liquor Control Act, to take cognizance of them. If the residents of the district are opposed to licenses generally on moral grounds, they have a remedy under the local option provisions of the act."

In Weinstein and Murman's Appeal, supra, Judge McNaugher of Allegheny County held as follows (p. 130) :

"The question has been raised whether the court may affirm a refusal by the board to grant a license where the complaint is brought by private citizens and the evidence to support it is produced by them and not by agents of the liquor control board. The answer seems to us obvious. No matter what the source of complaint, if the evidence makes out a case of law violation and is found to be credible, the court will sustain the board's action. We understood counsel for the applicants at

one of the hearing sessions to say that in the appeal of Julia Theoharus at No. 272 January sessions 1940 in the court of quarter sessions of Tioga county, Pennsylvania, Judge Crichton expressed a contrary opinion. We do not think that any language which he used affords any basis for such a contention. What he did say was this:

" 'If anything is apparent from our recent legislation on liquor licensing it is that general moral and economic objections to its sale existing in the minds of the citizens but not effectuated by an election in the manner provided by law, have nothing to do with the duty of the board to grant a license when the statutes have been complied with and that body is satisfied that the license will be exercised in accordance with those statutes and with its reasonable regulations promulgated under the authority thereof. And as the board is bound, so is this court. For either to accept public sentiment or pressure as the guide to its action is to substitute the individual will for the authority of law and to help pave the way for the subversion of the American idea that general rules should govern and not the will of any officer or citizen or group of citizens.'

"But this is very far from saying that the testimony of private citizens may not be introduced to show that the statutes have not been complied with."

Under the record the question before us is one of pure law, which is: After the person and the place have met all requirements and the approval of the board, can the board refuse a restaurant liquor license on grounds not embraced in the statute? The answer is "no".

This is not a case of first impression; it is simply the first time the board has followed discretion and departed from the plain letter of the law. We recall something about "the nose of the chancellor", and Sir Edward Coke spoke of "the crooked string of discretion". But be that as it may, section 403 of article LV, of the

Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as reënacted by the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, 47 PS §744-403, provides in part as follows:

"Section 403. Issuance of Hotel, Restaurant and Club Liquor Licenses.—Upon receipt of the application, the proper fees, and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, and the applicant seeks a license for a hotel, restaurant or club as defined in this act, *the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license . . .*: Provided, however, That, in the case of any new license or the transfer of any license to a new location, the board may, in its discretion, grant or refuse such new license or transfer if such place, proposed to be licensed, is within three hundred feet of any church, hospital, charitable institution, school or public playground, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil. . . ." (Italics supplied.)

Section 6 of the Beverage License Law of May 3, 1933, P. L. 252, as reënacted by the Beverage License Law of June 16, 1937, P. L. 1827, is to the same effect in the use of the word "shall".

According to the Century Dictionary "shall" means: "Am obliged or compelled to; will have to; must; ought to; used to express obligation, necessity or duty in connection with some act yet to be carried out."

Accordingly to "Words and Phrases", the word "shall," in general, "when addressed to public officials,

is mandatory," "and excludes the idea of discretion".

From 57 C. J. 548, §5: "Imperative or Mandatory. —(1) In General: In common, or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command, and one which has always, or which must be given a compulsory meaning; as denoting obligation. It has a peremptory meaning, and it is generally imperative, or mandatory. It has the invariable significance of excluding the idea of discretion."

In the notes to the above-quoted section a large number of Pennsylvania cases are cited, beginning with City Sewage Utilization Co. v. Davis et al., 8 Phila. 625, the second syllabus of which is:

"The word 'shall' in an Act will not be construed 'may,' unless it is absolutely necessary to prevent irreparable mischief."

If any "irreparable mischief" is before us, the repairing must be done by the legislature; our powers go no further than to declare the law as it now stands; and our attention is concentrated on an act of assembly. Though a liquor license is a mere privilege (Spankard's Liquor License Case, 138 Pa. Superior Ct. 251), the dispensing of such privilege is governed by statute. Though a mistake in law on our part is not reversible (Lithuanian Beneficial Association's Club Liquor License Case, 142 Pa. Superior Ct. 556), the more absolute the power of a court becomes, the more scrupulously carefully should such power be used. Though a modifying order, such as holding the license in suspension until present conditions change, might be the best solution, still, under Mami's Liquor License Case, 144 Pa. Superior Ct. 285, it is more than doubtful that we have such power, and this though Oriole's Liquor License Case, 146 Pa. Superior Ct. 464, may be somewhat to the contrary. And though we hear appeals de novo, and the burden is on the appellant to establish all matters necessary to entitle him to a license, still, even though we were inclined to follow the court's action

in Steffen's License, 41 D. & C. 708, which we are not, the record before us does not permit us.

The word "shall," as used in section 403 of the Pennsylvania Liquor Control Act, has been before the courts on two questions: (1) The effect it has on restrictions in conveyances of the property against its use for the dispensing of alcoholic beverages; and (2) the effect the word "shall" has in the matter of the transfer of a license under section 8 of the act.

In Fanning's License, 23 Pa. Superior Ct. 622, it was held that a covenant in a deed forbidding the use of the premises conveyed for liquor license purposes was valid, binding and proper ground for the refusal of a license under the Brooks High License Law. Such covenant applies with like effect under the present Liquor Control Act. In Raschiatore's Appeal, 23 D. & C. 315, it was held (syllabus) :

"The Liquor Control Board should refuse to grant a retail liquor license for a premises which is subject to a restrictive covenant prohibiting the sale of alcoholic beverages thereon, even though the applicant is in all respects duly qualified."

But the late Judge Copeland said (p. 321) :

"We realize that it is a hardship upon him to have expended the money which he did in making his building and its fixtures meet all the requirements of the law, but he should have known that the restriction in his deed was a covenant running with the land, prohibiting either the court of quarter sessions or the Pennsylvania State Liquor Control Board from granting this license."

We have already cited and quoted from Havens' License, supra. In this case the board refused the license because of the proximity of the premises to a State park, and that a covenant in the deed provided (p. 377) :

" 'That said lot or piece of ground shall not at any time forever hereafter be used for any purpose or

thing or in any manner which will be offensive or detrimental to the quiet and peaceful enjoyment of other lands in the vicinity, or obnoxious to or detrimental to the good health and morals of the people residing in that vicinity.' "

In holding that a covenant against the use of the property for license purposes could not arise from implication, and in reversing the board and granting the license, Judge Boyer, of Bucks County, said (p. 380) :

"We cannot agree with the contention that the location of the premises with relation to the boundaries of the park would in itself be a legal ground for refusing the license, in the absence of specific legislation to that effect, or that it could affect the construction of the deed restrictions."

In Cheris' Liquor License Case, 127 Pa. Superior Ct. 355, an appeal by the applicant in a case before Judge Copeland similar to Raschiatore's Appeal, supra, the Superior Court, in a per curiam opinion, squarely decides our inquiry by saying (p. 359) :

"The provision in the Pennsylvania Liquor Control Act (sec. 403) directing that on compliance by the applicant with certain conditions, the board 'shall grant and issue a liquor license,' does not have the effect of nullifying and invalidating such a restrictive covenant in the deed, or rendering it illegal. The declared purpose of the Act is to *regulate and restrain* the sale, traffic in and use of alcohol and alcoholic, malt and brewed liquors, not to *promote and encourage* their sale and use; and the statute declares (sec. 3) that it shall be interpreted as an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth. Certainly, the Act exhibits no purpose or intent to strike down and render void covenants in deeds restricting or prohibiting the sale of intoxicating liquors, which our courts have upheld as reasonable and legal. Neither in the title nor in the body of the act

is such an effect expressly given to its provisions, nor can it reasonably be implied.

"The statute is dealing in general terms with applicants, who, ordinarily, are not restricted or prohibited by covenants in their deeds from selling intoxicating liquors on their premises, and the mandatory word 'shall' relied on by appellant is necessarily limited to an applicant whose deed does not prohibit the sale of the liquors which he proposes to dispense under his license."

President Judge Keller, in McGettigan's Liquor License Case, 131 Pa. Superior Ct. 280, emphasizes the Cheris opinion by repeating its language as we have quoted it.

Aside from cases involving restrictions and covenants in conveyances the mandatory character of the word "shall" in the act has never been questioned. But in cases concerned with the transfer of licenses "shall" has been specifically considered.

Section 408 of the act is in part as follows:

"Section 408. Licenses Not Assignable; Transfers.—(a) Licenses issued under this act may not be assigned. The board is hereby authorized to transfer any license from one person to another, or from one place to another within the same municipality or both, as the board may determine; but no transfers shall be made to a person who would not have been eligible to receive the license originally, nor for the transaction of business at a place for which the license could not originally have been issued lawfully."

"As the board may determine" is the language of section 408, and if the word "shall" is to be applied to transfers it has to be found in section 403. In Larkin's License, 35 D. & C. 684, Judge Rosen, of Philadelphia, ignored section 408, and under section 403 held "shall" as mandatory in the transfer of licenses. In his decision he says (p. 686):

"This section 403 would seem to us to mean that the duty of the Liquor Control Board to issue a liquor license is mandatory if the applicant has complied with the conditions laid down in the act, and that the board has a discretion only in those cases specifically mentioned in this paragraph of the act, namely, in the case of the issuance of a license to a club, and in the case of the issuance of a new license or the transfer of a license to a new location if the location is within three hundred feet of a church, etc., or the principal business at the location is the sale of liquid fuels and oil. In all other cases the duty of the board is mandatory. While our attention has not been called to any decision on the question, this construction of the act seems to have been approved in Cheris' Liquor License Case, 127 Pa. Superior Ct. 355."

In Popp's License, 41 D. & C. 500, Judge Evans, of Erie County, considered both section 403 and section 408, found section 403 controlling, and, introductory to our above quotation from Larkin's License, supra, said (p. 503):

"We, therefore, cannot agree with the contention of counsel for the Liquor Control Board and counsel for protestants that, the decision of this court being final and one from which no appeal can be taken, we should consider the equities of this particular case and read into the act absolute discretionary power, which under the provisions of the act is not given. The Pennsylvania Liquor Control Act has been operative since November 1933, and we have been unable to find, nor have any cases been cited us, in which a court of this Commonwealth has assumed such power. On the contrary, the position we have taken is supported by that of Judge Rosen, in Larkin's License, 35 D. & C. 684 . . ."

In Appeal of Gentile et al., 43 D. & C. 53, President Judge Dumbauld, of Fayette County, also considered both section 403 and section 408. In his discussion he said (p. 60):

"Without further elaboration, we conclude that section 408 of the Pennsylvania Liquor Control Act does not confer upon the Liquor Control Board a wider discretion in the matter of transfer of licenses than is conferred by section 403 of that act as to the original granting or refusal of licenses and that it is mandatory upon the board to transfer the license, when the provisions of the act and regulations of the board have been complied with. No discretion to do otherwise is vested in the board."

His first conclusion of law was (p. 67) :

"1. The words 'as the Board may determine,' as contained in section 408 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, do not confer upon the Liquor Control Board a wider or broader discretion in the matter of transfer of such licenses than is conferred upon that board by the language of section 403 of the said act, with reference to the original granting of such licenses."

And in his order he said in part (p. 68) :

"Now, October 27, 1941, for the reason that the Pennsylvania Liquor Control Act makes it mandatory upon the board to transfer a license when the provisions of the act and regulations of the board have been complied with, and no discretion to do otherwise being vested in the board . . ."

None of these cases was appealed, and it is significant that the Liquor Control Board has never submitted pure discretion or introduced the word "shall" directly to the Superior Court. But even when cloaked in a restrictive deed, the Superior Court still recognized the imperative, just as three of the ablest jurists of the Commonwealth have done. And all subsequent decisions seem to have overlooked Revocation of Mark's License, 115 Pa. Superior Ct. 256, under the Beverage License Law of May 3, 1933, P. L. 252, the base act of those we are now considering, in which the now President Judge Keller said (p. 260) :

"If the applicant meets the requirements prescribed by the act and he is not barred by other existing legislation, he is entitled to a license, and the county treasurer cannot unlawfully discriminate or show any favoritism in the issuing of the licenses."

As to the restaurant liquor license the appeal will have to be sustained.

As to the appeal from the refusal of an amusement permit a different rule of law applies. Such permits were authorized by paragraph (*l*) of section 23 of the Beverage License Law of July 18, 1935, P. L. 1217, as amended by paragraph XII of section 23 of the Beverage License Law of June 16, 1937, P. L. 1827, and by paragraph (*n*) of section 601 of the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, as amended by paragraph (14) of section 601 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762. These paragraphs are the same, and paragraph (14) of the Liquor Control Act of November 29, 1933, 47 PS §744-602, is as follows:

"It shall be unlawful for any licensee, except club licensees, to permit, in any licensed premises, or in any place operated in connection therewith, dancing, theatricals, floor shows, or moving picture exhibitions of any sort, unless the licensee shall first have obtained, from the board, a special permit to provide such entertainment; or for any licensee, under any circumstances, to permit, in any licensed premises, any lewd, immoral or improper entertainment, regardless of whether a permit to provide entertainment has been obtained or not. The board shall have power to provide for the issue of such special permits, and to collect a fee for such permits equal to one-fifth of the annual license fee, but not less than twenty-five dollars ($25). All such fees shall be paid into the State Stores Fund. No such permit shall be issued in any municipality which, by ordinance, prohibits amusements in licensed places. Any violation of this clause shall, in addition to the

penalty herein provided, subject the licensee to suspension or revocation of his permit and his liquor license."

These paragraphs do not repeal the Act of July 9, 1881, P. L. 162 (Oriole's Liquor License Case, 146 Pa. Superior Ct. 464), which forbade the granting of licenses to the proprietors, lessees, keepers or managers of any theatre, circus, museum or other place of amusement.

An amusement permit is not an incident or appendage to a hotel or restaurant liquor license. Such is only permissive and not peremptory, and, as on appeal the court of quarter sessions hears the application de novo, and assumes the place of the Liquor Control Board in all matters, and particularly in a matter of discretion, we will affirm the board's refusal of an amusement permit.

The prime cause of the difficulties connected with alcoholic beverages in our Commonwealth is an apparent failure of the Liquor Control Board and its various employes to distinguish the differences between the Beverage License Law and the Liquor Control Act. In the Beverage License Law of June 16, 1937, P. L. 1827, there is no statement of purpose; "eating place" means premises where food is regularly and customarily prepared and served, and licenses are to issue to "a reputable, bona fide eating place where food is regularly and customarily prepared and sold". This last provision is in both the Act of 1933, P. L. 252, and the Act of 1935, P. L. 1217, but in both prior acts "eating place" was merely a room.

In the Pennsylvania Liquor Control Act of 1937, P. L. 1762, sec. 3, "Interpretation of Act", it is provided:

"(a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be

liberally construed for the accomplishment of this purpose."

This is a reënactment of section 3 of the Acts of 1935, P. L. 1246, and 1933, P. L. 15 (special session). In all three acts, 1933, 1935, and 1937, "restaurant" is substituted for "eating place," as used in the Beverage License Law, and is defined in part as follows:

" 'Restaurant' shall mean a reputable place operated by responsible persons of good reputation, and habitually and *principally used* for the purpose of providing *food* for the public . . ." (Italics supplied.) (The Act of 1935 substituted the word "food" for the word "meals" in the Act of 1933.)

In construing these portions of the Liquor Control Act, in Rydewski's Appeal, 121 Pa. Superior Ct. 171, Judge Stadtfeld said (p. 173) :

"The Liquor Control Board refused him a license . . . for the reason that he was not 'operating an establishment habitually and principally used for the purpose of serving food . . .' "

After quoting section 3 as to the interpretation of the act, Judge Stadtfeld continued (p. 174) :

"The method evidently adopted to accomplish their purpose was to confine the sale of intoxicating liquors to bona fide hotels, restaurants and clubs, and we must construe the act so as to accomplish this purpose, not necessarily by limiting the number of licenses, but by strictly confining them to legitimate eating places. The burden is on the applicant to satisfy the Board that he is 'a person of good repute and seeks a license for a hotel, restaurant or club as defined in this act, etc.' (Section 403). The sale of liquor is only incidental to the maintenance of a legitimate eating place as described in the Act."

In Bailor's License, 42 D. & C. 411, Rice, P. J., of Juniata County, said (p. 415) :

"Over a period of seven months previous to August 12th, when the hearing was held, not more than an average of six cars a day stopped at this place, and the receipts from the food served were evidently so small as not to be worth while to record in a book. The testimony also shows that the State highway route on which the premises abut passes through a sparsely-settled region, that, except on Sundays and holidays, there is little traffic on this route, and that a successful restaurant cannot be conducted at this place without a license. If an eating place, without a license, is not a success from a financial point of view, a beverage license is not to be granted to make it pay. Under the facts and circumstances of this case, we are satisfied that the applicant did not have, at the time of his application or at the time the first investigation was made, a legitimate bona fide premise where food was regularly and customarily prepared and sold, that he erected the building for the purpose of getting a license and not primarily for the purpose of conducting an eating place, and that an eating place at this location, without a beverage license, will not be a successful business venture."

Under the Malt Beverage Acts there may have been a measure of excuse for the licensing of eating places. But neither the Liquor Control Act, nor its interpretation by the courts, warrants the licensing of a "restaurant" that is not self-sustaining by the sale of food, without the support of liquor income. "Restaurants" are for the accommodation of the stranger, the traveller, the casual public, the unattached, the unestablished; they cannot be drinking establishments, places of amusement, or questionable resorts; and there is nothing in the statutes of this Commonwealth authorizing the licensing of "night clubs", and the like, particularly in rural places which otherwise would be left in peace and quiet. Under the Act of 1881 a dance hall or place of amusement cannot be licensed. If a "restau-

rant" cannot financially survive unless it becomes a place of amusement or a dance hall it should not be licensed for any purpose. And postage stamp dance floors hardly meet the requirements of "the poetry of music and motion". There may be room for motion, but motion of what?

The real question behind the granting of a "restaurant" license is the old one of necessity, and this is a legitimate inquiry of the control board, and would be a legal ground of refusal. This we believe is the meaning of the law. Had the board in the instant case, after full hearing and upon sufficient evidence, refused the applicant for the reason that the location, state of travel, circumstances of neighboring population, income, etc., showed such premises to be unnecessary and incapable of being profitable as an unlicensed eating place, it would have acted within the plain purview of the law. This would have presented a very different question. But we cannot go outside of the record before us, and we conclude that the restaurant license, under the law, should have been granted. But, mindful of the Act of 1881, and the announced purposes of the Liquor Control Act, we will dissociate the amusement permit, and direct that none be issued.

Before prohibition discretion brought all courts into disrepute. The control board has not, is not intended to, and should not have discretion. In its administration it should forget profit and remember the text and the purpose of the law. "Restaurant shall mean a reputable place . . . habitually and principally used for the purpose of providing food for the public." A "restaurant" must be a going business before it can be licensed, and if the income is not sufficient to support it it is not legally necessary, and under the law should not be licensed. So to enforce the Liquor Control Act would weed out the thousands of places which should never have been licensed, and whose continuance is again threatening the free life. A thorough, painstak-

ing and impartial administration of the acts of assembly will go far to eradicate the evils of which just complaint is made.

It is unfortunate that the question before us should have been presented at this time, based on the grounds stated. We are as war-conscious as we should be. And we know that alcohol will no more mix with total war than it will with gasoline. If war is to change the law there are lawful ways for it to be done. The courts cannot and should not; they are under solemn oaths to declare the law as it is; and the great milestones of human liberties have been great juries, great lawyers, and the courts rising above coercion and power and the prejudices and passions of the hour. If the Liquor Control Board can assume discretion as a war measure, such discretion may wear any cloak it may wish to assume in peace, but this court cannot be a party to such palpable departure from the law of the Commonwealth.

### Order

And now, February 26, 1943, for the reason that the Pennsylvania Liquor Control Act makes it mandatory upon the Liquor Control Board to grant a retail restaurant liquor license when the provisions of the act and regulations of the board have been complied with, and no discretion to do otherwise being vested in the board, the appeal of Thaddeus J. Yarosz is sustained, and the Liquor Control Board is hereby ordered and directed to grant and issue the retail restaurant license as applied for. But the order of the board, in that it refused an amusement permit, is affirmed, and such amusement permit, as refused, shall not issue now or at any time hereafter.