# Hand's Case.

*Practice, Supreme Court—Certiorari—Act of April 18, 1919, P. L. 72—Findings of fact—Evidence—Review—Conclusions of law.*

1. Under the Act of April 18, 1919, P. L. 72, this court, on certiorari, will not overrule findings of fact which have evidence to sustain them; but will review conclusions of law based upon undisputed facts.

2. Where the material facts are undisputed this court will enter a final order and not remit the case to the court below for that purpose.

*Commissioners of navigation—Powers—Money award against licensed pilot—Excessive pilotage fees—Suspension of pilot—Period of suspension—Refund of excessive fees.*

3. The Board of Commissioners of Navigation has no power to make a money award against a licensed pilot; but if he has collected money to which he is not entitled they may suspend him until he refunds it.

*Commissioners of navigation—Jurisdiction—Differences between masters of ships and pilots—Act of June 8, 1907, P. L. 469.*

4. The differences between "masters, owners and consignees of ships and pilots," which the Board of Commissioners of Navigation may pass upon and decide, under the Act of June 8, 1907, P. L. 469, are differences regarding the actions of the pilot, and they may be considered whether or not a suit at law could successfully be maintained in regard thereto.

*Pilots—Compensation—Amount—Statute—Rule of Board of Navigation Commissioners—Charge for constructive pilotage.*

5. A licensed pilot has no right to demand or receive any compensation except as provided by statute, or by rule of the Board of Commissioners of Navigation passed in pursuance thereof.

6. A licensed pilot has no right to charge for an alleged constructive pilotage, or as upon an implied contract between him and the vessel, such matters not being provided for by statute or rule of the board.

7. The statutes as to pilotage charges reviewed.

Argued January 5, 1920.   Appeal, No. 278, Jan. T., 1919, by Board of Commissioners of Navigation, from de-

cree of C. P. No. 2, Philadelphia Co., Sept. T., 1917, No. 1066, setting aside decision of Board of Commissioners of Navigation, suspending Howard S. Hand, from acting as a pilot in the case of In re Howard S. Hand, a pilot. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Appeal from order of Board of Commissioners of Navigation. Before ROGERS, J.

The Board of Commissioners of Navigation suspended Howard S. Hand from acting as a pilot until he should return to the agents for the Norwegian bark, "Skansen I," the sum of $110, being the amount of pilotage charges found to be illegally collected by him. The court set aside the decision of the board and directed that the pilot be reinstated to his former standing. The Board of Commissioners of Navigation appealed.

*Errors assigned* were the conclusions of law and the order of the court.

*Joseph L. Kun,* Special Deputy Attorney General, with him *William I. Schaffer,* Attorney General, for appellant.—The board had power to make the order of suspension until all pilotage improperly collected was refunded: Virdin's App., 13 Phila. 151.

The pilot was not entitled, under the law, (a) to collect two pilotage fees, nor to collect (b) for detention: Section 2 of the Act of May 11, 1889, P. L. 188; Long's Case, 40 Pa. C. C. R. 304; Sections 5 and 6, Act of March 24, 1851, P. L. 229.

Charges for pilotage must be made according to the acts of assembly, and special contracts with respect thereto are unlawful: Schellenger v. Board of Wardens, 19 Phila. 471.

*John F. Lewis,* of *Lewis, Adler & Laws,* for appellee. —The courts have repeatedly awarded compensation

where no services whatever have been rendered other than the mere offer to perform: Nash v. The Thebes, 12 Hunt's Mer. Mag. 82. Note 5 L. R. A. (N. S.) 439.

The offer of a pilot's services, if refused, entitles the pilot to full fees or half fees, according to the provisions of the statutes of different states: The Edith Godden, 25 Fed. 511; The Glen Earne, 7 Fed. 604; The American, 1 Fed. Cases No. 289, 1 Lowell 176; Banta v. McNeil, 2 Fed. Cases No. 966, 5 Ben. 74; The California, 4 Fed. Cases, No. 2312, 1 Sawyer 463; The George S. Wright, 10 Fed. Cases, No. 5340; The Kalmar, 14 Fed. Cases, No. 7601, 10 Ben. 242; Cooley v. Port Wardens, 12 Howard 299.

The first pilot who offers his services, if rejected, is entitled to his fee: Flanders v. Tripp, 2 Low. 16; The America, 2 Amer. Law Review 458; Ex-parte McNiel, 13 Wallace 236; Edith Golden, 25 Fed. Rep. 511; Steamship Co. v. Joliffe, 2 Wallace 450.

OPINION BY MR. JUSTICE SIMPSON, February 2, 1920:

The Norwegian bark Skansen I, being about to leave the port of Philadelphia, applied for a licensed pilot. In response thereto Howard S. Hand, the appellee, was sent, but when he and the master reached the vessel, the mate in charge thereof reported that ten of the crew had deserted, leaving it insufficiently manned for its voyage. Appellee then stated the bark could do one of two things, retain him, upon paying $3 a day, or dismiss him upon paying the full pilotage of $110. The agent elected to pay the $3 a day, and for fourteen days the pilot reported to the agent's office as ready for duty. At the expiration of this time, the vessel not having yet obtained a sufficient crew, the pilot was notified he need not further hold himself in attendance thereon. He then demanded $42 for detention, in accordance with the above arrangement, and the full pilotage of $110 in addition, threatening to libel the vessel if they were not paid, whereupon they were paid under an agreement

that it should be "without prejudice to the captain's contention that a charge for outward pilotage, when the vessel leaves, shall not be made."

Subsequently, a full crew having been obtained, appellee was again sent to pilot the vessel. He conducted it down the river and bay and out to sea, and for so doing presented a second bill for $110, again threatening to libel the vessel if it was not forthwith paid. It was, therefore, approved by the captain under protest, and was paid by the agent under protest. Later a complaint was lodged with the board of commissioners of navigation, alleging the pilot was not entitled to two pilotages. A hearing was had, at which both sides were represented, resulting in the board finding the facts above set forth, sustaining the bark's contention, and suspending the pilot until he should return $110 to the agent. The pilot appealed to the court below, which found substantially the same facts, but set aside the decision of the board at its costs, upon the ground that the payment of the first sum of $110 was a settlement of the differences between the parties, and, therefore, the board was without jurisdiction in the premises. It thereupon took this appeal.

No question is raised as to the right of the board to appeal, save in so far as it is averred that no one can appeal, because section 13 of the Act of June 8, 1907, P. L. 469, makes the decision of the court of common pleas final and conclusive. Without stopping to consider whether or not the language of this section was intended to cover every character of decision made by the common pleas, it is evident it does not prevent the taking of a certiorari, which this appeal in effect is; and in this aspect of the matter it is controlled by the Act of April 18, 1919, P. L. 72, which provides "That in any proceedings heretofore or hereafter had in any court of record of this Commonwealth, where the testimony has been or shall be taken by witnesses, depositions or otherwise, and where an appeal has been or shall hereafter be taken ......such testimony shall be filed in said proceedings

......and the same shall be reviewed by the appellate court as a part of the record, with like effect as upon an appeal from a judgment entered upon the verdict of a jury in an action at law, and the appeal so taken shall not have the effect only of a certiorari to review the regularity of the proceedings in the court below." This does not require us to overrule findings which have evidence to sustain them, but where, as here, the essential facts are both found and undisputed, it is our duty to reverse, affirm or modify the order or judgment appealed from, the same as if it had been "entered on the verdict of a jury." In the present case the decision was in effect that, as a matter of law, the commissioners were without jurisdiction, and in that light we must review it.

The fundamental error of the court below was in supposing the order of the board could not be sustained unless the owner of the bark had a legal right to recover back the money paid. This was error, for, as correctly stated by the learned counsel for appellee, "the commissioners of navigation are not a court to try actions of debt or nondebt between a pilot and a ship." In the present instance it is possible the owner might have successfully maintained an action, for the words "without prejudice" import an agreement that existing rights shall not be affected by the payment, but "shall be as open to settlement by negotiation or legal controversy, as if the money had not been turned over": Genet v. Delaware & Hudson Canal Co., 170 N. Y. 278. This, however, is an immateral matter, for, as pointed out by Judge THAYER in Appeal of Henry Virden, 13 Phila. 151, 152, the action of the board is not even an "order [on] the pilot to refund the pilotage which he had received" but only "an order of suspension from duty ......which the pilot may himself terminate at any moment by making restitution to the master......[and which kind of order] is, beyond all question, within the limits of their authority."

The "differences......between masters, owners and consignees of ships and pilots" referred to in section 4 of the Act of March 29, 1803, P. L. 542, as amended by section 1 of the Act of June 8, 1907, P. L. 469, are not "differences" as to the right of the former to recover in an action at law, but "differences" regarding the actions of the pilot, which, in the interest of the commerce and peace of the State, the board is given power to regulate and determine, and which it did regulate by its order that any pilot who collects a pilotage fee "without rendering actual service by his presence on board such vessel, as is contemplated by the letter and spirit of the law, shall be deemed guilty of misconduct and upon conviction thereof shall be subject to suspension for such period as the commissioners shall deem fit." All the court below should have considered, therefore, and all that is before us, is the question as to whether or not the pilot did collect more than he was entitled to have; and in considering this we agree with appellee that "Pilotage fees are regulated by law. Pilots cannot charge more or even less than the regular fees. They cannot charge more because they lack the authority"; and we agree also with his statement "that if any licensed pilot demands, asks or receives a greater sum than is authorized by law, he may be deprived of his license." Did appellee demand and receive a greater sum?

As a licensed pilot of the State, appellee is entitled to all the rights and privileges accorded to him by her statutes, and the rules and regulations of the board passed in pursuance thereof, and is subject to all the duties and obligations arising thereunder; for, in accepting a license, he necessarily does so upon an express or implied agreement to comply with all the restrictions and limitations imposed upon him by the law under which it is granted. It follows that, as a licensed pilot, acting under and by virtue of the license, he cannot have or retain any compensation not allowed by the authority under which he received the license; and

hence, as his counsel says, "it is purely a question......
whether the fees [demanded and retained] are due or
not due." There is no such thing as an implied contract
between the vessel and him, nor any such thing as a con-
structive performance of services, because the statutes
and rules do not provide for either. Especially is this
so, as, by section 4 of the Act of March 29, 1813, P. L.
257, it is unlawful to ask or receive for pilotage a greater
sum than is allowed by this act, modified, of course, as
to amounts and additional charges only, by later stat-
utes.

It was, therefore, incumbent upon the pilot to show
a statute or rule of the board which justified the double
charge, and he has shown none. Section 1 of the Act of
March 30, 1899, P. L. 23, says he shall be paid "for con-
ducting a vessel" between the capes of the Delaware and
the cities along the river. It says nothing about con-
structively conducting a vessel. Section 2 of the Act of
May 11, 1889, P. L. 188, allows him $3 a day "whilst
conducting said vessel [if it] be detained......by ice or
by any other unavoidable circumstances, not personal to
himself." It allows no detention charge "whilst [not]
conducting said vessel." Section 5 of the Act of June 8,
1907, P. L. 469, provides compensation for "extraordi-
nary services," in the event of which the "board of com-
missioners shall, in case the parties cannot agree, deter-
mine the compensation to be allowed for such services."
If it be assumed that waiting until a crew is obtained is
such "extraordinary services," then the amount of $3 a
day was agreed upon therefor by the parties, at the sug-
gestion of appellee himself, was approved by the board,
and has been paid to him. Section 5 of the Act of June
8, 1907, P. L. 469, also requires the ship to take "the pilot
who shall first offer himself to any inward-bound ship or
vessel," but the Skansen I was not an "inward-bound ship
or vessel." Section 6 of the Act of March 24, 1851, P. L.
229, provides "that all sums due for pilotage, half pilot-
age and all other claims and penalties, in the nature or

in lieu thereof, shall, as they accrue, become and remain a lien upon the vessel chargeable therewith, her tackle, apparel and furniture, until they are paid," a provision which appellee says determines the question as to "whether the fees [claimed by him] are due or not." Without considering how far, if at all, that section applies to the charge now made, it is sufficient to say that all such claims, by the terms of the section itself, are payable to "The Society for the Relief of Distressed and Decayed Pilots, their Widows and Children" and not to appellee; and this has not been changed by subsequent legislation unless it is by section 11 of the Act of 1907, supra, in which event they are payable to the board and not to appellee. No other statute or rule of the board has been cited to us, and we have found none, which tends to sustain the claim now under consideration, and we can but conclude, therefore, that the money was improperly demanded and received.

It follows that, as the board in suspending appellee was only obeying the command of section 12 of the Act of 1907 that they "enforce the laws of the Commonwealth pertaining to pilots and pilotages," the order of the court below must be reversed; and, since, as stated, the material facts are both found and undisputed, we should make an end of the litigation.

The order of the court below is reversed and set aside, that of the board of commissioners of navigation is reinstated and affirmed, and the appeal of the pilot to the court of common pleas is dismissed at his costs.