Revocation of Mark's License.

Argued September 25, 1934.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John E. McDonough,* and with him *R. Paul Lessy* and *Joseph E. Pappano,* for appellant.

*C. William Kraft, Jr.,* Assistant District Attorney, and with him *William J. MacCarter, Jr.,* District Attorney, for appellee.

OPINION BY KELLER, J., December 18, 1934:

The main question raised by this appeal is whether the court of quarter sessions has the authority to revoke a malt liquor license for cause shown other than a violation "of the laws of this Commonwealth relating to the sale of malt liquors or relating to the manu-

facture, sale or transportation of alcohol or other alcoholic beverages.''

The result depends upon the construction given the Act of May 3, 1933, P. L. 252, entitled ''An act to regulate and restrain the traffic in malt, brewed and vinous and fruit juice beverages,'' etc.

The 'Beverage License Law,' which was the short title of the act—now amended by the Act of December 20, 1933, P. L. 75 (Special Session 1933-4) to 'Malt Liquor License Law'—established a new system of licensing the sale of malt liquors, wholly different from that in force prior to the adoption of the 18th Amendment. The authority to license was placed in the county treasurer, instead of the court of quarter sessions and his discretion in granting the license is limited to seeing that the applicant comes within the requirements of the act, and is not barred by other existing legislation—See Act of May 31, 1881, P. L. 162. Subject to the restrictions imposed by later provisions, the sixth section of the act directed that the county treasurer ''shall issue to a person who conducts a reputable hotel, or incorporated club, or a reputable, bona fide eating place where food is regularly and customarily prepared and sold, and who makes application upon a form as hereinafter prescribed, pays the license fee hereinafter prescribed, and files the bond hereinafter required, a retailer's license for such place.'' It provided, however, that ''Such licenses shall be issued only to reputable individuals who are citizens of the United States and have for one year been residents of the municipality or township wherein the place of business is located at the date of their applications, or to reputable corporations organized or duly registered under the laws of Pennsylvania.''

The definitions previously given in the act limit the word 'retailer' to persons licensed to engage in the

retail sale of beverages, where the consumption thereof is upon the premises of such vendor, with the privilege of selling beverages to be carried from the premises by the purchaser thereof only, however, in the original containers; and 'eating place' to mean a room having an area of not less than 300 square feet and equipped with tables and chairs accommodating forty persons at one time.

The applicant for such a license is required, by Sections 10 and 11, to file with the county treasurer a written application in which he avers that he is within the conditions prescribed for the issuance of the license, and sets forth in detail information which the legislature deemed necessary for the granting of the license. Annexed to the application is a certificate which must be signed by at least twelve reputable qualified electors of the ward, borough or township in which such malt liquors are to be sold setting forth their acquaintance with the applicant, that they have good reason to believe that the statements contained in the application are true and they, therefore, believe that the application should be granted and that the license should issue. The application must be verified by affidavit of the applicant, and false swearing on the part of the applicant is made perjury.

It is not necessary to state here at length the conditions which must be met by the applicant and the information he must set forth in his application. They are printed at length in the margin[1]. It is enough to

---

[1] "Section 11......Application for distributors' and retailers' licenses shall contain—

(a) The name and residence of the applicant, and how long he has resided there; and if an individual the residence of such applicant, and if an association, partnership or corporation the residences of the members, officers and directors, for the period of two years next preceding the date of such application;

(b) The particular place for which the license is desired, and a detailed description thereof;

(c) Place of birth of applicant, and if a naturalized citizen where

note that the act aims (1) to do away with mere drinking places as such and to restrict the sale of malt liquors to places where food is regularly and customarily prepared and sold; (2) to sever all connection between the manufacturer of such liquors and the retail licensee, thus avoiding the evils and abuses which in the old days attended the ownership of retail licensed places by brewers; (3) in furtherance of this object, to ascertain the owner of the premises and see that no person but the licensee is in any way pecuniarily interested in any licensed place; and (4) to restrict the grant of licenses to reputable citizens of the United States, resident in the place to be licensed, and reputable corporations authorized to do business in this state.

If the applicant meets the requirements prescribed

---

and when naturalized; and if a corporation when and where incorporated, with the names and addresses of each officer and director;

(d) Name of owner of premises, and his residence;

(e) That the applicant is not, or in case of a partnership or association that the members or partners are not, and in the case of a corporation that the officers and directors are not, in any manner pecuniarily interested, either directly or indirectly, in the profits of any other class of business regulated under this act, except as hereinafter temporarily permitted;

(f) That applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person shall be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter temporarily permitted;

(g) Whether applicant, or in case of a partnership or association any member or partner thereof, or in case of a corporation any officer or director thereof, has, during the three years immediately preceding the date of said application, had a license for the sale of beverages revoked, or has, during the same period, been convicted of any criminal offense, and, if so, a detailed history thereof;

(h) A full description of that portion of the premises for which license is asked, and, if any other business is to be conducted concurrently with the sale and distribution of beverages, a full history of such business, relating the nature thereof, the length of time it has so previously been conducted by the applicant, or his predecessor, at such location,"

by the act and he is not barred by other existing legislation, he is entitled to a license, and the county treasurer cannot unlawfully discriminate or show any favoritism in the issuing of the licenses.

Once issued, the authority of the county treasurer is ended. He cannot revoke a license for any cause whatever.

But Section 13 of the act provided on this point as follows: "Revocation and Suspension of Licenses by Court of Quarter Sessions. After a license has been granted, upon petition of the Attorney General, the treasurer, the district attorney, or fifteen or more taxpayers, residents of the ward, borough or township where the place of business is located, to the court of quarter sessions, and upon sufficient cause being shown or proof being made to the court that the licensee holding a license, or any partners, members, officers or directors of the licensee, has or have violated any of the laws of this Commonwealth relating to the sale of beverages, or relating to the manufacture, sale or transportation of alcohol or/and other alcoholic beverages, it may, upon due notice and proper hearing being given to the person so licensed, suspend or revoke the said license issued by the treasurer. The court shall assess or remit the costs in its discretion. The action of the court in suspending or revoking a license shall be final."

A license was duly issued by the county treasurer of Delaware County, under this act, to Jacob Mark for the premises 314 East Tenth Street, Marcus Hook. On September 15, 1933, the district attorney of Delaware County, acting under the 13th section above quoted, filed his petition in the Court of Quarter Sessions of Delaware County asking that court to revoke or suspend this license.

An answer was filed by the licensee denying the averments of the petition and challenging the right of

the court to revoke or suspend the license for any cause other than a violation of the laws of this Commonwealth relating to the sale of beverages or alcoholic liquors. Hearings were had in open court on September 28, 1933 and November 20, 1933, at which testimony in support of the rule was taken, in the course of which it was developed that the licensed premises were owned by one Isaac J. Jenkins; that Jenkins had been conducting a restaurant there from October, 1932, and on or about April 4, 1933 his place had been raided by the county detective and he had been arrested, charged with keeping a gambling house; that he had been indicted, and on June 20, 1933 entered a plea of nolo contendere, and was sentenced to pay a fine of $100 and undergo imprisonment for sixty days; that he claims to have sold the business,—not the real estate—to Jacob Mark, who obtained the retailer license, but he, Jenkins, has remained in control of said business, acting as manager for Mark, who does not come to the premises more than once a month, although his place of business is close at hand. No papers were produced showing the sale of the business to Mark, or the lease of the premises to Mark, or any payments of rent or salary by Mark to Jenkins—the evidence justifying the inference that Mark was not the "only person in any manner pecuniarily interested in the business" licensed, but that Jenkins was the real party interested in the business at and after the filing of the application and the grant of the license, as he had been before; and that Mark's name had been used in applying for the license because Jenkins could not have obtained a license in his own name and right.

The court on March 1, 1934 revoked the license.

The first question that arises is whether in view of the provision in Section 13 above quoted, "The action of the court in suspending or revoking a license shall be final," an appeal lies to this court?

Strictly speaking an 'appeal' does not lie: Dolan's Appeal, 108 Pa. 564; but the Act of May 9, 1889, P. L. 158, which provided that "all appellate proceedings in the Supreme Court heretofore taken by writ of error, appeal or certiorari, shall hereafter be taken in a proceeding to be called an appeal," did not change the existing right of review, nor its extent in cases already provided for, nor modify in any manner its exercise; it simply provided that dissimilar proceedings should be called by the same name: Rand v. King, 134 Pa. 641, 19 A. 806; Gates v. Penna. R. Co., 154 Pa. 566, 571, 26 A. 598; Christner v. John, 171 Pa. 627, 629, 33 A. 107; so an appeal in the nature of a 'certiorari' will lie, notwithstanding the provision above quoted, in order that this court under its general supervisory powers on certiorari, may inspect the whole record with regard to the regularity and propriety of the proceedings, to ascertain whether the court below exceeded its jurisdiction or its proper legal discretion: Independence Party Nomination, 208 Pa. 108, 111, 57 A. 344; Pollard's Petition, 127 Pa. 507, 522, 17 A. 1087; Donoghue's License, 5 Pa. Superior Ct. 1, 10, 11; and moreover, under the Act of April 18, 1919, P. L. 72, we may examine the evidence in such cases to test the right of the court to make the order complained of: Sterrett v. MacLean, 293 Pa. 557, 560, 561, 143 A. 189; not to weigh conflicting evidence, but to determine whether the order appealed from is supported by any evidence and whether the court or judge had jurisdiction to do the act complained of: Walker's App., 294 Pa. 385, 389, 144 A. 288; Bedford v. Rosser, 283 Pa. 345, 348, 129 A. 92; Hand's Case, 266 Pa. 277, 109 A. 692; Plains Twp. Election Returns, 280 Pa. 520, 124 A. 678; Bangor Elec. Co.'s Petition, 295 Pa. 228, 145 A. 128; Bright's Contested Election, 292 Pa. 389, 394, 141 A. 254; Yancoski's App., 313 Pa. 461, 169 A. 762.

We shall, therefore, consider the appeal only as a writ of certiorari, broadened in scope by the Act of 1919, supra, which makes the testimony taken in the court below part of the record to be reviewed, to the extent above stated.

We come then to the main question involved, does Section 13 authorize the court of quarter sessions to revoke a malt liquor retailer license for any cause other than a violation of the laws relating to the sale of malt beverages or the manufacture, sale or transportation of alcoholic liquors? The court of quarter sessions was authorized to revoke the license, "upon sufficient cause being shown or proof being made to the court that the licensee ...... has violated any of the laws of this Commonwealth relating to the sale of beverages," etc. If the construction contended for by the appellant should prevail no effect whatever is given the phrase "upon sufficient cause being shown," for the interpretation would be precisely the same if it were wholly omitted and the act read: "Upon proof being made to the court that the licensee ...... has violated any of the laws of this Commonwealth relating to the sale of beverages," etc.; or to give it effect the conjunction 'or' would have to be changed to the preposition 'by', so as to make the clause read, "Upon sufficient cause being shown *by* proof," etc. We see no reason either to construe the clause in such a way as to delete part of it or to render any part of it of no effect, or to change the wording of the act in order that effect may be given to all of it, when the clause, read just as it is written, authorizing the court to revoke the license in the alternative, (1) upon sufficient cause being shown, or (2) proof being made that the licensee has violated, etc., gives effect to every part of it and requires no change of wording, and is the natural meaning of the language used.

As the authority which granted the license has no

power to revoke it, irrespective of how grossly he may have been imposed upon, it is but natural that the legislature should commit to the court of quarter sessions the power to revoke a license for a sufficient cause existing when the license was obtained, as well as for a violation of the laws relating to the sale of malt liquors. The right to indict a licensee for swearing falsely in obtaining the license would be an inadequate remedy if the licensee could reap the benefit of his false swearing by continuing the sale of liquors, without power in the State to revoke the license. We think the act gives the court of quarter sessions power to revoke the license upon sufficient cause being shown other than a violation of the laws relating to the sale of liquors; and very wisely does not attempt to catalogue the causes which it deems sufficient, leaving it to the legal discretion of the court to determine, subject to review on certiorari by the appellate courts: Sterrett v. MacLean, supra. The phrase 'upon sufficient cause being shown' has been frequently used in dealing with the revocation of liquor licenses. We find it in the Act of March 22, 1867, P. L. 40, 41, where the court of quarter sessions was given power to revoke any license to sell intoxicating liquors granted by them "upon sufficient cause being shown;" and this 'cause' was not restricted by the Supreme Court to a violation of the laws relating to the sale of liquors. See Dolan's App., 108 Pa. 564, where the appellant contended (p. 565), that "the only sufficient cause ...... is a conviction for any of the offenses declared by the legislature to be grounds of revocation." So also, in the Brooks High License Act of May 13, 1887, P. L. 108, it was provided in Section 7, that "upon sufficient cause being shown or proof being made to the said court that the party holding a license has violated any law of this Commonwealth relating to the sale of liquors, the court of quarter sessions shall,

upon notice being given to the person so licensed, revoke the said license.'' This is almost the identical language used in the act now under consideration, and it was held by this court in Trimble's License, 41 Pa. Superior Ct. 370, that a license could be revoked by the court where the licensee had falsely represented in his application that he was a naturalized citizen of the United States, when in fact he was an alien; thus recognizing that the 'sufficient cause shown' was not limited to the sale of liquors in violation of law. McGinley's License, 32 Pa. Superior Ct. 324, 326, 327, also, but impliedly, recognized that the court had power to revoke the license for sufficient cause shown other than a violation of the law relating to the sale of liquors. See also, Schmitt's License, 37 Pa. Superior Ct. 420.

In our opinion, under Section 13 of the Act of 1933, —and the same ruling applies to its amendment aforesaid—, the court of quarter sessions does have the power and authority to revoke a license granted by the county treasurer, upon sufficient cause being shown, other than proof that the licensee has violated any of the laws of the Commonwealth relating to the sale of malt liquors, or the manufacture, sale or transportation of alcoholic liquors.

We have accordingly examined the record as on a writ of certiorari, with the scope of review broadened by the Act of April 18, 1919, P. L. 72, and find that the court below exceeded neither its jurisdiction nor its proper legal discretion in revoking the retailer license issued to Jacob Mark.

One further matter requires consideration. The Act of 1933, supra, provides that the licensee shall file a bond ''conditioned for the faithful observance of all the laws of this Commonwealth relating to the sale of beverages, or relating to the manufacture, sale or transportation of alcohol or any other alcoholic beverage.'' By its terms it does not provide for a forfeiture

of the bond for any cause other than a violation of such laws. It follows that judgment cannot be entered upon the bond unless the license shall have been revoked because of the licensee's failure faithfully to observe the laws of the Commonwealth relating to the sale of beverages. To that extent the assignment of error must be sustained. In other respects, the order of the court below is affirmed at the costs of the appellant.