## Lacivita's Appeal

*James A. Reilly* and *J. Russell Smiley*, for appellants.

*Davis W. Henderson*, for protestants.

*Andrew G. Uncapher*, Special Deputy Attorney General, for Liquor Control Board.

DUMBAULD, P. J., August 22, 1945.—A painstaking study of the record in this case, an appeal from the decision of the Liquor Control Board, refusing a restaurant license for premises in Luzerne Township, discloses not a single legal reason in avoidance of an order reversing

that of the Liquor Control Board, and granting this license.

It is proper to say that, were any such reason to be found in the record, we would unhesitatingly sustain the decision of the board and refuse the license. We are in sympathy with the owners of residence properties in the vicinity of appellant's premises who protest against the granting of the license and assert that its operation will make less desirable their continued residence there and diminish the actual value of their properties.

When John J. Gerba and his wife, one-time lessees of these premises, at no. 7, September sessions, 1943, C. D., appealed from a like decision of the Liquor Control Board refusing a license for substantially the same reasons given for the refusal of appellants' application in this case, in an opinion and order sustaining the board, we said (p. 222) :

"We do not think that the reasons given by the Board for the refusal of this license are legal reasons. If, in the hearing de novo, provided by the Act, we were limited to the reasons assigned by the Board for the refusal of the license, we could not avoid overruling the order by the Board and directing the granting of a license.

"However, we regard the Board as having rendered a proper judgment. The reasons assigned therefor are unimportant. A proper judgment may be sustained on appeal, notwithstanding wrong reasons are assigned therefor": In re Appeal of John J. Gerba, 7 Fayette 219.

We there sustained the board and dismissed the appeal because the description of the premises and the activities of its proprietors, as disclosed in the testimony, contained in the record, failed to comply with the description of a restaurant as contained in the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, where a restaurant is defined as ". . . a reputable place, operated by responsible persons of good reputa-

tion, and habitually and principally used for the purpose of providing food for the public; the place to have an area within a building of not less than four hundred square feet, equipped with tables and chairs accommodating at least thirty persons at one time."

In the present appeal, the point and only point on which we relied in the Gerba case has been eliminated. At a hearing before an examiner for the Liquor Control Board on the application of these appellants for restaurant liquor license, George I. Roberts, an officer of the board, charged with the duty of investigating the establishment and its proprietors, testified as follows:

"Q. As I understand the investigation discloses that the room is a proper size, and the tables and everything meet the requirements?

"A. All requirements of the Liquor Control Act and board regulations are met.

"Q. In respect to the kitchen?

"A. In respect to everything.

"Q. How about the supply of food on hand?

"A. There was an abundance of food.

. . . . . . . . .

"Q. What did you find on hand?

"A. There was a large selection of both prepared and unprepared food sufficient for 40 persons. A good deal was Italian specialties such as spaghetti and ravioli. There was a quantity of sandwich meat and cheese, that, of course, would take care of sandwich trade.

"Q. How much cheese and how much meat?

"A. I estimated that to be sufficient for 40 persons, which is twice the amount required by the board."

This testimony was repeated at the hearing de novo, and thus the legal existence of a restaurant, within the definition of the act, was made a matter of record.

The good repute of appellants was not questioned. The truth of the statements in the application as to pecuniary interests was admitted.

On May 15, 1945, the Liquor Control Board made an order refusing the license in an opinion in which facts are found as follows:

"1. Protests have been filed with the board opposing the issuance of a license at this location.

"2. A number of the protestants appeared at the hearing and testified that they object to the licensing of this establishment for the reason that the premises are located in a district which is predominantly residential in character, that the granting of a license would have a tendency to depreciate real estate values and that they are opposed to the issuance of a license in such close proximity to their homes."

In a summary of the board's reasons for refusing the license, it said:

"A careful review of all of the facts of record pertaining to the application now pending in the names of Achille and Teresa Lacivita, discloses that the same objections raised by the residents concerning the previous applications have been revived in this case. The board finds no reasonable cause to disregard the protests which have, during the past several years, consistently been made by residents objecting to the issuance of a restaurant liquor license in this establishment. The board, therefore, is of the opinion that the protests must be sustained and that this application for a new restaurant liquor license should be refused. Therefore, the following order is made:

*"Order*

"And now, May 15, 1945, for the above reasons, it is ordered and decreed that the restaurant liquor license applied for by Teresa Lacivita and Achille Lacivita for premises located in the Township of Luzerne and County of Fayette be and it is hereby refused.

"(Signed) Pennsylvania Liquor Control Board."

At the hearing de novo in this court on appeal duly taken, all questions except the protests above referred

to were eliminated. Protestants renewed their objections and the court heard their testimony in support thereof. Appellants called witnesses to contradict the opinions of protestants with reference to the effect of a licensed restaurant upon the residential properties in that vicinity.

The protestants also testified that a restaurant, as such, at that place was not necessary for the convenience of the public. Appellants called witnesses to contravert this testimony, the witnesses for appellants contending that such restaurant is necessary for public convenience.

All this testimony was offered without objection and its competency was not questioned.

There is thus posed a single question, namely: Can the Liquor Control Board lawfully refuse a restaurant liquor license on the ground that affected property holders have made protest against the granting of the license?

The answer is found in the act of assembly in plain, unambiguous words. We quote the language of section 403 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as reënacted and amended by the Act of June 16, 1937, P. L. 1762:

"Upon receipt of the application, the proper fees, and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, and the applicant seeks a license for a hotel, restaurant or club as defined in this act, the board *shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license* . . . Provided, however,

That, in the case of any new license or the transfer of any license to a new location, the board *may, in its discretion, grant or refuse such new license or transfer,* if such place, proposed to be licensed, is within three hundred feet of any church, hospital, charitable institution, school or public playground, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oils." (Italics supplied.)

It is thus observable that the legislature used the words "shall" and "may" in the same section. The board "shall" grant when the requirements of the law and regulations of the board are met. The use of the word "may" and the vesting of discretion to grant or refuse is only introduced in the section when the specific conditions described in the act are present. The mention of the conditions that confer discretion and the use of the word "may" exclude all other conditions. To justify the action of the board we would be required to write into the proviso as one of the conditions upon which the board may exercise discretion the words "and when adjacent property holders protest".

That the legislature understood and intended the mandatory character of the use of the word "shall", and that provision could properly be made for referenda on questions of location and property interests in the operation of the act, is plainly shown in that section of the act regulating the location of liquor stores.

Section 301 of the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, is as follows:

"When the board shall have determined upon the location of a liquor store in any municipality, it shall give notice of such location, by public advertisement, in at least two newspapers of general circulation. If, within five days after the appearance of such advertisement, fifteen or more taxpayers, residing within a quarter of a mile of such location, shall file a protest with the court of quarter sessions of the county, aver-

ring that the location is objectionable because of its proximity to a church, a school, or to private residences, the court shall forthwith hold a hearing affording an opportunity to the protestants and to the board to present evidence. The court shall render its decision immediately upon the conclusion of the testimony, and from its decision there shall be no appeal. If the court shall determine that the proposed location is undesirable for the reasons set forth in the protest, the board shall abandon it and find another location."

If the legislature had intended that property owners in the vicinity of the place where a license is applied for should be given an opportunity to protest, surely a similar provision to that in section 301 would have been included in section 403.

We need not again say that the duty of a court is to interpret and enforce the law as found, not to make it; to adjudicate, not to legislate. This statute has been on the books since 1933. Many cases involving its interpretation have been presented to the courts of the Commonwealth. In none, either in the common pleas or in the appellate courts, do we find such a broad assertion of the discretion on the part of the board, upheld.

The board has been sustained in refusal of licenses in numerous cases, but such refusal has always been based on some other reason inherent in the preliminary requirements, the condition of the premises, the existence of covenants in the deeds for the premises on which license is applied for—in short upon some shortcoming either of the applicant or of the premises.

On the other hand, the books are full of decisions where the courts have said that the legislative "shall" means "shall" and not "may."

In Yarosz's License, 47 D. & C. 404, that learned and fearless jurist, Wilson, of the Court of Common Pleas of Beaver County, had for decision a case exactly paralleling ours. The protestants in that case asserted that they were the authorities in charge of two indus-

trial plants in close proximity to the premises for which the license was desired; that these industrial plants were engaged in the production of materials vital to the war effort and that the use of alcoholic beverages by the employes might have a detrimental effect upon the performance of precision work engaged in by the employes.

In passing upon the application, the board said (p. 405) :

"However, in view of the fact that the United States is engaged in a global war, and the granting of the license in question is protested by two industrial plants engaged in the production of materials necessary to the successful prosecution of the war effort and located in close proximity to the place sought to be licensed, the board is of the opinion that the protest should be sustained and the license refused."

Says Judge Wilson:

"Under the record the question before us is one of pure law, which is: After the person and the place have met all requirements and the approval of the board, can the board refuse a restaurant liquor license on grounds not embraced in the statute? The answer is 'no.'

"This is not a case of first impression; it is simply the first time the board has followed discretion and departed from the plain letter of the law. . . ."

After discussing in detail and at length the act of assembly and applicable decisions, he closes his opinion, a classic in itself, which should be carefully studied by the Liquor Control Board, as follows (p. 421) :

"It is unfortunate that the questions before us should have been presented at this time, based on the grounds stated. We are as war-conscious as we should be. And we know that alcohol will no more mix with total war than it will with gasoline. If war is to change the law there are lawful ways for it to be done. The courts cannot and should not; they are under solemn oaths

to declare the law as it is; and the great milestones of human liberties have been great juries, great lawyers, and the courts rising above coercion and power and the prejudices and passions of the hour. If the Liquor Control Board can assume discretion as a war measure, such discretion may wear any cloak it may wish to assume in peace, but this court cannot be a party to such palpable departure from the law of the Commonwealth."

In Weinstein and Murman's Appeal, 89 Pitts. L. J. 129, McNaugher, J., of the Court of Common Pleas of Allegheny County, quoting Crichton, J., of the Court of Common Pleas of Tioga County, says (p. 130) :

"If anything is apparent from our recent legislation on liquor licensing it is·that general moral and economic objections to its sale existing in the minds of the citizens but not effectuated by an election in the manner provided by law, have nothing to do with the duty of the board to grant a license when the statutes have been complied with and that body is satisfied that the license will be exercised in accordance with those statutes and with its reasonable regulations promulgated under the authority thereof. And as the board is bound, so is this court. For either to accept public sentiment or pressure as the guide to its action is to substitute the individual will for the authority of law and to help pave the way for the subversion of the American idea that general rules should govern and not the will of any officer or citizen or group of citizens."

In Haven's License, 27 D. & C. 376, Boyer, J., of the Court of Common Pleas of Bucks County, says (p. 380) :

"In the absence of any provisions in the Liquor Control Act similar to those in the former Brooks High License Act, providing for the filing of remonstrances by citizens and the calling of witnesses to express their opinions on the advisability of granting the license, the court has no right or authority to give consideration to

such remonstrances or evidence. In the absence of statutory provision they are not legal evidence. The existing legislation does not make the courts an independent licensing authority and does not vest in them the power to exercise their personal views as to the moral phase of the liquor question, or as to the desirability of the granting of any particular license. The sole purpose of the appeal provided for by the act is to prevent an unreasonable or arbitrary exercise of power or an abuse of discretion on the part of the Liquor Control Board. . . . *The court respects and fully appreciates the opinions of the remonstrants and the high motives which inspired their protest, but it is powerless, under the provisions of the Liquor Control Act, to take cognizance of them.*" (Italics supplied.) . . .

To the same effect is the decision of the Quarter Sessions Court of Erie County in Popps' License, 41 D. & C. 500, Evans, J.; and likewise Larkin's License, 35 D. & C. 684, Rosen, J.; and our own case of Appeal of Gentile et al., 43 D. & C. 53.

Perhaps the latest addition to the long line of cases in which the above view is upheld is that of Chancellor Hall Corporation's Appeal, 53 D. & C. 83.

In that case a hotel liquor license was refused by the board, on remonstrance by the Police Department of Philadelphia because of the large number of licensed places within a small area making a difficult situation for law enforcement officials. An appeal to the Quarter Sessions Court of Philadelphia County was taken and that court, by Milner, J., says (p. 87):

"We are of the opinion that under the facts above related there is a mandatory duty upon the part of the board under the plain and unambiguous wording of the Liquor Control Act to grant the license, and the fact that there are 51 licenses in the area above described does not, under the said act, justify the refusal of the license . . .".

"The legislature has spoken in this matter and the question whether a liquor license should be granted and the circumstances under which it should be granted are primarily matters for legislative and not for judicial opinion: Schlaudecker v. Marshall et al., 72 Pa. 200; Spankard's Liquor License Case, 138 Pa. Superior Ct. 251. Appellant having met all the statutory requirements, the board had no discretion to refuse a new license to the applicant, and therefore the appeal must be sustained."

The Superior Court, with limited jurisdiction because the act provides that from the decision of the quarter sessions there shall be no further appeal, has only indirectly, but very plainly, passed upon the question involved. In several cases it has shown that in its opinion the word "shall" as used in the act is mandatory.

In Revocation of Mark's License, 115 Pa. Superior Ct. 256, that court, by Keller (then P. J.), said (p. 260):

"If the applicant meets the requirements prescribed by the act and he is not barred by other existing legislation, he is entitled to a license, and the county treasurer [the issuing officer at that time] cannot unlawfully discriminate or show any favoritism in the issuing of the licenses."

In Cheris' Liquor License Case, 127 Pa. Superior Ct. 355, we find (p. 360):

"The statute is dealing in general terms with applicants, who, ordinarily, are not restricted or prohibited by covenants in their deeds from selling intoxicating liquors on their premises, and the mandatory word 'shall' relied on by appellant is necessarily limited to an applicant whose deed does not prohibit the sale of the liquors which he proposes to dispense under his license."

In McGettigan's Liquor License Case, 131 Pa. Superior Ct. 280, this language is repeated approvingly by Keller, P. J.

With the plain language of the act, with a practically unanimous ruling by all the judges before whom the question has been presented, we are unable to find a single reason upon which to base a sustaining order.

It is of little comfort to these remonstrants to say that they have made their protest to the wrong instrumentality of government. They are asking the court to "make" the law instead of "interpret and enforce it". Their appeal for redress must be to the law-making branch of our governmental organization. If they feel that a majority of their fellow citizens of Luzerne Township agree with them, they may invoke the local option feature of the same act of assembly which provides for the granting of licenses. A small percentage of the electorate of that township (25 percent of the highest vote at the last election) may cause the question of license or no license in Luzerne Township to be submitted to the voters, who thus may prohibit the granting or continuing of any liquor license in that municipality. Without such action their protest must be in vain.

### Order of court

Now, August 22, 1945, for the reason that the Pennsylvania Liquor Control Act makes it mandatory on the Liquor Control Board to grant a retail restaurant liquor license when the provisions of the act and the regulations of the board have been complied with and no discretion to do otherwise being vested in the board, and having found as a fact that all the provisions of the act or regulations of the board have been complied with in this case, and having concluded as a matter of law that the refusal of the license constitutes an abuse of discretion on the part of the board, the appeal of Teresa Lacivita and Achille Lacivita be and the same is hereby

sustained and the Liquor Control Board is ordered and directed to grant and issue the retail restaurant liquor license as applied for.

Appellants shall pay the costs of this proceeding.