## Reichman Liquor License

*William J. C. O'Donnell,* for appellant.
*James Phelan,* for appellee.

PITT, J., September 27, 1971.—Despite the caption, this is an appeal, not from a revocation or suspension, but from the imposition of a $500 fine. On March 12, 1968, the Pennsylvania Liquor Control Board issued a citation setting forth that the board was in possession of facts which led it to believe that the licensee had violated provisions of the Liquor Code and the rules and regulations adopted pursuant thereto and specifically set forth as follows:

"The licensed establishment operated by you was maintained in an insanitary condition, on or about September 26, October 17, 25, 1967; January 25, 1968, and on divers other occasions within the past year."

A hearing was held before an examiner of the Pennsylvania Liquor Control Board on May 16, 1968, and on July 11, 1968, the board issued an order imposing a fine in the sum of $500.

An appeal was filed on behalf of the licensee with the

Court of Quarter Sessions of Chester County on July 18, 1968. A hearing was set on said appeal for September 17, 1968, and the record discloses that said hearing was continued a number of times throughout the balance of 1968 and 1969 and a goodly part of 1970, and that a hearing was finally had on October 28, 1970, before the Honorable Thomas C. Gawthrop, President Judge of the Court of Common Pleas of Chester County.

The record likewise discloses that a hearing was held before Judge Gawthrop on October 27, 1969, on appellant's motions for sanctions for failure on the part of the appellee to file answers to interrogatories. That motion for sanctions was denied by the court. Judge Gawthrop died February 2, 1971, and the matter has been assigned to the undersigned for disposition. Having heard reargument of the matter, and having reviewed in detail this voluminous record, we herein set forth our decision.

Appellant contends that the action of the Liquor Control Board was unlawful in that the licensee is not charged with a violation of the Liquor Code, and that the board's enforcement powers apply only to violations of the Liquor Code and regulations thereunder. The alleged violations pursued by the appellee, if satisfactorily proven, constitute violations of the regulations of the Commonwealth of Pennsylvania Department of Health. We disagree with appellant's position since the Liquor Code provides in part as follows:

"Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, of any violation of any laws of this Commonwealth or of the United States of America relating to the tax-payment of liquor or malt or brewed beverages by any licensee within the

scope of this article, his officers, servants, agents or employes, *or upon any other sufficient cause shown,* the board may, within one year from the date of such violation or cause appearing, cite such licensee to appear before it or its examiner, not less than ten nor more than sixty days from the date of sending such licensee, by registered mail, a notice addressed to him at his licensed premises, to show cause why such license should not be suspended or revoked or a fine imposed": Act of April 12, 1951, P. L. 90, art. IV, sec. 471, as amended, 47 PS §4-471. (Italics supplied.)

The statute makes it clear that licensees are subject to penalties for violation of not only the specific provisions of the Liquor Code, but also upon any other sufficient cause shown. Our courts have long recognized that it is almost impossible for the legislature to anticipate and thus provide in the Liquor Code for all various situations that might arise in citation cases: Weinstein Liquor License Case, 159 Pa. Superior Ct. 437 (1946). The Liquor Code provides in part that the act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, *health,* peace, and morals of the people of the Commonwealth, and that all of the provisions of the act should be liberally construed for the accomplishment of this purpose: Act of April 12, 1951, P. L. 90, art. I, §104, 47 PS §1-104(a). (Italics supplied.)

The constitutionality of the Liquor Code has come under attack before in this regard. The courts of Common Pleas of Philadelphia and Montgomery Counties have upheld the constitutionality of this provision of the Liquor Code. See Aquilani's License, 32 D. & C. 348 (1938); Revocation of Donath's Liquor License, 57 Montg. 232 (1941). The Pennsylvania Superior Court passing upon the topic noted that: "We think the act gives the court of quarter sessions power

to revoke the license upon sufficient cause being shown other than a violation of the laws relating to the sale of liquors; and very wisely does not attempt to catalogue the causes which it deems sufficient, leaving it to the legal discretion of the court. . . .": Revocation of Mark's License, 115 Pa. Superior Ct. 256 (1934), at page 265.

The citation issued by the Liquor Control Board to the appellant advised that the licensed establishment was maintained in an insanitary condition. Appellant contends that this notice was invalid in failing to advise adequately of the specific violations alleged to have been committed and also in failing to observe the time limit requirements for notice set forth in the Code. With this we do not agree. Appellant's position might be well taken if nothing else preceded the citation description of "insanitary conditions." However, this record in great detail specifies the inspection tours by agents of the Department of Health which were made on September 26th and October 25, 1967, and on January 25, 1968. On these visits the areas of violation were carefully enumerated and the licensee notified. Despite this notification, these conditions were not corrected. We believe that in this background the appellant's complaint as to the quality of the notice is not well taken.

Concerning the time limits imposed by the Liquor Code for action on violations, we note that the statute requires that once a violation is reported or observed by the board, they have 90 days within which to complete their investigation and must within 10 days thereafter notify the licensee concerning the violation and must within a year after the violation has occurred cite the particular licensee.

The alleged earliest violation here occurred September 26, 1967, and the last alleged violation was January

25, 1968. The board was notified by the Department of Health of the violations on January 26, 1968. (R-131). The Pennsylvania Liquor Control Board investigation began February 1, 1968, and was completed February 5, 1968. Notice was given the licensee by certified mail on February 5, 1968 (R-130, Ex. C-1). The citation issued March 12, 1968. We find this sequence of events is within the time limits set forth by the Liquor Code.

At the hearing de novo the Liquor Control Board has the burden of proof and the burden is not on the licensee to disprove the Board's findings. In re Revocation of License of North Harrisburg War Veterans Home Assn., Inc., 88 Dauphin 363 (1968). The proceedings to establish a violation and set a penalty, however, are civil in nature, and must be established by a fair preponderance of the evidence: Moravian Bar, Inc., Liquor License Case, 200 Pa. Superior Ct. 231 (1963). To support their position, the appellee Liquor Control Board introduced Commonwealth Exhibit 2, which is Chapter 4, Article 400, Regulations for Conducting and Operating of Eating or Drinking Places, Pennsylvania Department of Health. Those regulations provide in part as follows:

"(I) §2 B. Food Protection

"Toxic substances when not in use shall be identified and stored . . . so as to not contaminate food . . . All food . . . prepared . . . shall be protected from contamination and stored in such a manner as to prevent rodent harborage . . . Dispensing scoops . . . dippers . . . shall be stored between uses in an approved running water dipper well . . . All potentially hazardous food shall be maintained at safe temperatures, except during necessary periods of preparation and service.

"(II) §3 B  Health Control

"Persons engaged in the preparation . . . of food

shall not use tobacco in any form while in . . . food preparation areas.

"(III) §4A  Installation of Equipment.

"All equipment shall be . . . installed . . . in accordance with criteria set forth by the National Sanitation Foundation . . . equipment . . . shall be kept in good repair . . . equipment or utensils shall be free from . . . chipped places.

"(IV) §4B  Cleaning Equipment and Utensils.

"Utensils . . . immersion for at least one-half minute in clean hot water at a temperature of at least 170° F.

"(V) §5C  Plumbing

"Plumbing shall be so sized . . . as to prevent contamination of the water supply . . . or create an unsanitary condition or nuisance.

"(VI) §5E  Hand Washing Facilities

". . . Such facilities for its employees . . . equipped . . . with hand cleansing soap . . . and approved sanitary towels . . . Such facilities will be kept clean and in good repair.

"(VII) §5F  Garbage Disposal.

"All garbage . . . shall . . . be kept covered with tight fitting lids when filled or stored or not in continuous use. All garbage . . . shall be disposed of with sufficient frequency . . . as to prevent a hazard to health.

"(VIII) §5G  Insect and Rodent Control

"Effective measures shall be taken to protect against the entrance into the establishment, and the breeding or presence on the premises of insects and rodents.

"(IX) §6A  Floors, Walls and Ceiling

"Floor surfaces in kitchens . . . shall be smooth, non-absorbent materials and so constructed as to be easily cleaned.

"All floors shall be kept clean and in good repair. Walls and ceilings of all rooms shall be kept clean and in good repair. All walls . . . in which food is prepared . . . shall be easily cleanable, smooth, light colored and shall have washable surfaces . . .

"(X) §6D Dressing Rooms and Lockers.

"Adequate facilities shall be provided for the orderly storage of employees' clothing . . . (O)ne or more dressing rooms shall be provided for this purpose. Designated areas as well as dressing rooms shall be provided with lockers . . . and shall be kept clean.

"(XI) §6E Miscellaneous

"Soiled linens . . . shall be kept in suitable containers until removed for laundering.

"No . . . animals shall be allowed in any area used for the conduct of public eating and drinking place operation.

"All parts of the establishment and its premises shall be kept neat, clean and free from litter, garbage and rubbish."

Appellee called as witnesses Richard D. Merion and David A. Jackson, who testified concerning their inspections of the licensed premises, Tally-Ho Hotel-Motel, in their capacity as health officers for the Pennsylvania Department of Health. They each testified as to the observations made by them on the premises of alleged health violations and quoted from the Health Department Regulations. Further, Mr. Merion stated that the alleged violations were reviewed with representatives of the licensee on November 6, 1967 in the presence of their counsel.

The testimony of the officers of the Health Department set forth violations as follows:

a. Unrefrigerated roast beef, tray of sliced turkey, turkey roll (R-12, 39).

b. Rib roasts warm on shelf over oven, cooked bacon draining on egg carton (R-12, 13, 41, 43).

c. Toxic sprays and materials stored with food on same shelf (R-16).

d. Uncovered food in refrigerator, steam table, kitchen counters, and serving table (R-16).

e. Food in dirty containers and equipment in need of cleaning (R-17, 23, 50, 51, 109).

f. Dishwashing cycle on final rinse 167° (R-24), 165° (R-32) (R-51, 58, 108).

g. Chipped pans, unwashed glasses in motel (R-25, 26, 89).

h. Improper closing of refrigerator (R-26).

i. No running water in ice cream well and dippers stored in dirty tin can (R-26, 110).

j. Difficult to clean and improper installation of equipment. (R-27, 67, 68).

k. Dirty floors and tile missing from floor, food stains on walls requiring cleaning and repainting (R-27, 28, 110, 120).

l. Hole in ceiling (R-28, 49).

m. No soap or towels in employees' rest room, no provision to hang clothes for employees, some clothes in food preparation areas. (R-28, 76, 112, 121).

n. Excessive litter, conditions harboring vermin (R-29).

o. Animal (cat) in kitchen (R-29, R-78).

p. Roach eggs in kitchen (R-29, 80) roaches in beverage storage area (R-110, 111), roach on kitchen wall (R-32).

q. Uncovered garbage and excessive flies (R-30, 108, 126).

r. Clams stored in water in metal bucket (R-31, 54).

s. Low water line in steam table (R-31, 85).

t. Chicken stuffing unheated (R-111).

u. Smoking in kitchen (R-112, 125).

v. Unclean milk dispenser (R-116).

Appellant, through effective cross-examination of the officers of the Health Department, has minimized some of these violations under the regulations of the Health Department. We think, however, that this record taken as a whole clearly demonstrates that the appellee Liquor Control Board has carried its burden and established the insanitary conditions of the licensed premises by a preponderance of the evidence.

## CONCLUSIONS OF LAW

1. The Act of April 12, 1951, P. L. 90, art. IV sec. 471, as amended, is constitutional.

2. The notice requirements of the Act of April 12, 1951, P. L. 90, art. IV, sec. 471, have been complied with.

3. Appellee, Pennsylvania Liquor Control Board, has established by a preponderance of the evidence that the premises of appellant were maintained in an insanitary condition on September 26th and October 25, 1967 and January 25, 1968.

4. The insanitary conditions herein proven by the Pennsylvania Liquor Control Board are sufficient cause for the imposition of a $500 fine. Therefore, the court makes the following:

## ORDER

And now, September 27, 1971, the order of the Pennsylvania Liquor Control Board dated July 11, 1968, imposing a fine of $500 upon Penrose and Ronald H. Reichman is sustained.