Rum Seller, Inc., Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellee.

Submitted on briefs April 4, 1983, to Judges Rog-
ers, Williams, Jr. and Barbieri, sitting as a panel of
three.

*Brian J. Cali,* for appellant.

*Felix Thau,* Assistant Counsel, with him *J. Leon-
ard Langan,* Chief Counsel, for appellee.

Opinion by Judge Williams, Jr., November 17,
1983:

Rum Seller, Inc. (licensee) appeals from an order
of the Court of Common Pleas of Lackawanna County
affirming a decision of the Pennsylvania Liquor Con-
trol Board (Board) revoking[1] the licensee's restau-
rant liquor license effective January 11, 1982 and for-
feiting its bonds for license years beginning the first
of August 1978, 1979 and 1980 and ending, respective-
ly, the thirty-first of July 1979, 1980 and 1981.

---

[1] Section 471 of the Liquor Code (Code), Act of April 12, 1951,
P.L. 90, *as amended,* 47 P.S. §4-471.

The Board made the following findings:

1. The licensed corporation was not the only one pecuniarily interested in the operation of the licensed business, during the period April 1, 1979 to February 10, 1981.

2. The licensee, by its servants, agents or employes did permit its Wholesale Liquor Purchase Permit Card to be used illegally, during the period April 18, 1979 to January 16, 1981.

3. The licensee falsified its Application for Restaurant Liquor License for the license year expiring July 31, 1981, on May 5, 1980.

4. The licensee's Board-approved manager, Rosemarie Henson, failed to devote full time and attention to the operation of the licensed business, during the period April 1, 1979 to February 10, 1981.

5. The licensee's Board-approved manager, Rosemarie Henson, was employed by other than the licensed corporation, during the period June, 1979 to January 20, 1981.

The Board, in deciding to revoke the license considered the licensee's record of prior citations[2] and the

---

[2] On February 20, 1981, the Board imposed a $400.00 fine upon the licensee for (1) permitting lewd, immoral or improper entertainment on the licensed premises, on August 2, 1980; (2) permitting entertainers to contact and/or associate with patrons on the licensed premises, on July 24, 26, August 2, 1980; and (3) permitting to be used on the inside of the licensed premises, a loudspeaker or similar device whereby the sound of music or other entertainment could be heard outside, on July 24, 26, and August 2, 1980.

The Board again, on November 6, 1981, imposed a $500.00 fine upon the licensee for (1) permitting lewd, immoral or improper entertainment on the licensed premises, on November 14, 27, 1980 and (2) permitting entertainers to contact and/or associate with patrons on the licensed premises, on November 7, 1980.

penalties imposed therefor, and the common pleas court, after a de novo hearing, adopted all of the Board's factual findings and affirmed the revocation order.

In a liquor license revocation proceeding our scope of review where, as here, the matter was heard de novo by the trial court, is limited to a determination of whether the order appealed from was supported by sufficient evidence and whether the trial court committed an error of law or abused its discretion. *New Sorrento, Inc. v. Pennsylvania Liquor Control Board*, 64 Pa. Commonwealth Ct. 422, 424, 440 A.2d 676, 677 (1982) (citations omitted).

The licensee's sole contention is that sufficient evidence does not support the trial court's findings of fact. Specifically, the Board enforcement officer's testimony regarding the nature, extent and duration of the involvement of Rosemarie Hensons' licensee's sole corporate officer during the period in question (and, according to the liquor license renewal application for the license year ending July 31, 1981, ''the only person pecuniarily interested in the business'') is rejected, by the licensee, as inadmissible hearsay.[3]

Although subpoenaed by the Board, Mrs. Henson did not appear at the common pleas court hearing. A Board enforcement officer then proceeded to testify from his interview with Mrs. Henson held on January 20, 1981. The testimony, objected to by counsel for licensee, established that at the time of the interview,

[3] From November 1978 (when the business was purchased) until April 16, 1981, Mrs. Henson was the sole shareholder and lone corporate officer of licensee. On April 16, 1981, Mrs. Henson formally resigned from her position as president, secretary and treasurer of licensee. Her former husband, Robert Henson, who had acted, according to his testimony, in a consultative capacity with the licensee, thereupon became sole shareholder and corporate officer on April 17, 1981.

the licensee's sole corporate officer (1) had not been involved with the licensee's business operations since February 1979; (2) had moved to New Jersey and had *twice* visited the business premises between February 1979 and January 20, 1981; and (3) had been continually employed by a bridal salon from June 1979 to January 20, 1981. Based upon such testimony the trial court found that Mrs. Henson was not *alone* pecuniarily interested in the operation of the business (in violation of Section 404 of the Code, 47 P.S. §4-404);[4] that Mrs. Henson falsified the liquor license application for the license year expiring July 31, 1981 (in violation of Section 471 of the Code);[5] and, that Mrs. Henson, as purported manager, failed to devote full time and attention to the business' operation and was employed by other than the licensee (in violation of Section 5.16 of Board regulations, 40 Pa. Code §5.16).

We believe that sufficient evidence exists upon which the trial court's findings could be supported. Under Pennsylvania law, "admissions by an officer of a company who stands in a position of authority are competent and binding on the company for whom he speaks." *Western Union Telegraph Co. v. N.C. Direnzi, Inc.*, 442 F. Supp. 1, 4 (E.D. Pa. 1977) (citations

---

[4] Although the Board and trial court failed to make factual findings establishing which person(s) other than Mrs. Henson was (were) pecuniarily interested in the business' operation, another's pecuniary interest can be inferred where the evidence fails to disclose the exercise of "any ownership rights in the business by the purported licensee." *See Appeal of E-J Westside Inn Corp.*, 68 Pa. Commonwealth Ct. 323, 325, 449 A.2d 93, 95 (citing *In re Mark*, 115 Pa. Superior Ct. 256, 176 A. 254 (1934)).

[5] On May 5, 1980, Mrs. Henson signed the liquor license renewal application for the year expiring July 31, 1981, wherein she affirmed and declared that she was the only person pecuniarily interested in the licensed business. Since the trial court found that she was not the only person pecuniarily interested in the business from April 1, 1979 to February 10, 1981, the renewal application was accordingly falsified.

omitted). Rosemarie Henson's statements to the Board's enforcement officer, uttered while she was the licensee's *sole* corporate officer,[6] are thus admissible against the licensee as admissions of a corporate officer standing in a position of authority. *Id.*

The enforcement officer's testimony therefore constitutes evidence sufficient to support the trial court's findings and order revoking the licensee's restaurant liquor license. Accordingly, we affirm.

### Order

AND Now, this 17th day of November, 1983, the order of the Court of Common Pleas of Lackawanna County, dated April 6, 1982, is affirmed.

---

[6] Mrs. Henson was interviewed by Board agents on January 20, 1981; she resigned from her position with the licensee on April 16, 1981.